**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| MARCI WEBBER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JEFFREY PHARIS, in his official capacity | ) |
| As Chief of the Elgin Mental Health Center, | ) |
| STATE OF ILLINOIS DEPARTMENT OF | ) |
| HUMAN SERVICES, a Department of the | ) |
| State of Illinois, the ELGIN MENTAL | ) |
| HEALTH CENTER, a body public, MARVA | ) |
| STROUD, individually, VELMA | ) |
| WESTBROOK, individually, WILLIAM | ) |
| EPPERSON, individually, GUS | ) |
| CABAZUDA individually, ZELLA NAPIER, | ) |
| individually, and GLORIA LANGUNILLA, | ) |
| individually, | ) |
| | |
| Defendants. | |

---

**CIVIL RIGHTS COMPLAINT**

**WITH REQUEST FOR TRIAL BY JURY**

---

Now comes the Plaintiff, Marci Webber, by and through her attorneys, the Law Offices of Kretchmar and Cecala, PC, with her complaint against the above named Defendants and requests trial by jury, and in support of her Complaint states as follows.

## I.    INTRODUCTION

1.     This is an action brought by Marci Webber, a person confined to the Elgin Mental Health Center ("Facility"), to vindicate profound deprivations of her constitutional rights caused by institutionally based brutality.

2.    On May 3, 2014, the Plaintiff, Marci Webber, a 47-year-old female was seated in the day room of the Defendant Facility at approximately 7:35 PM.

3.    At 7:35 PM Plaintiff Webber was informed by Loretta Vaughn, another patient at the Defendant Facility, that Plaintiff Webber and Loretta Vaughn were to be restricted from "snack time" privileges as ordered by Defendant Marva Stroud. At the time, Plaintiff Webber was known to be defenseless.

4.    Shortly after 7:35 PM Plaintiff Webber along with numerous other patients at the Defendant Facility began to enter the dining room for the evening snack.

5.    Upon entering the dining room Plaintiff Webber was accosted by Defendant Marva Stroud who shouted at Plaintiff Webber to leave the dining room, and stated, "You're not coming in here, you're not coming in here!"

6.    Defendant Velma Westbrook quickly approached Plaintiff Webber, stuck her finger in her face and shouted at Plaintiff Webber to leave the dining room.

7.    Plaintiff Webber asked, "I need to know why I can't come in."

8.    Again Defendant Velma Westbrook put her finger in Plaintiff Webber's face moving her face in extreme close proximity to Plaintiff Webber and shouting, "You're not getting any snack, you're restricted!"

9. Plaintiff Webber said, "You need to get out of my face." To which Defendant Velma Westbrook responded, "Move me, move me!"

10. Plaintiff Webber said, "You're trying to provoke me so you can make stuff up in my chart."

11. Defendant Velma Westbrook said, "That's right, I'm going to make stuff up and put it in your chart."

12. Defendant Marva Stroud then stepped in between Defendant Velma Westbrook and the plaintiff such that both Defendant Marva Stroud and Defendant Velma Westbrook were simultaneously threatening physical violence towards Plaintiff Webber.

13. Plaintiff Webber then walked away from the dining room entranceway and calmly returned to her room.

14. Upon returning to her room, Plaintiff Webber spoke calmly with her roommate for approximately 15 minutes.

15. At approximately 7:55 PM Defendant Zella Napier, security guard, came to Plaintiff Webber's room and indicated, "The nurse wants to see you."

16. Plaintiff Webber followed Defendant Zella Napier down the hallway approximately 100 feet to the men's day room where Plaintiff Webber was confronted by Defendant William Epperson, a security guard, and Defendant Gus Cabazuda.

17. Plaintiff Webber was escorted by the three Defendant security guards another 40 feet to the nurse's station and was directed to follow Defendant Gloria Langunilla, a nurse, into an examination area.

18. Plaintiff Webber was immediately grabbed by Defendant William Epperson, a security guard, and Defendant Gus Cabazuda from behind, securing her left and right arms

and forcing her torso onto the examination table, bending her body 90° at the waist while simultaneously grabbing her thigh to force her to hold still.

19.   Defendant Gloria Langunilla then pulled Plaintiff Webber's pants down exposing her buttocks and injected a shot of medication into Plaintiff Webber's body.

20.   Plaintiff Webber then requested phone privileges to contact her lawyer which were granted.

21.   Plaintiff Webber then calmly returned to her room at 8:20 PM alone, although sobbing and crying profusely.

22.   In concert or conspiracy, Defendants maliciously and baselessly caused Plaintiff to be forcibly drugged, attempting to justify their actions with the serious and false accusation that the Plaintiff represented a threat to others.

## II.    JURISDICTION, VENUE AND NOTICE

23.   This action arises under the Constitution and laws of the United States, including Article III, Section 1of the United States Constitution and is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C.§ 1988. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

24.   This case is instituted in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

### III.    PARTIES

25. At all times relevant hereto, Plaintiff Marci Webber was a resident of the State of Illinois and a citizen of the United States of America.

26. At all times relevant hereto, Defendant Marva Stroud was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Defendant Marva Stroud is sued individually.

27. At all times relevant hereto, Defendant Velma Westbrook was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Srevices and/or of the Defendant Facility. Defendant Velma Westbrook is sued individually.

28. At all times relevant hereto, Defendant Zella Napier was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Defendant Zella Napier is sued individually.

29. At all times relevant hereto, Defendant Gloria Langunilla was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Defendant Gloria Langunilla is

sued individually.

30. At all times relevant hereto, Defendant William Epperson was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in his capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant William Epperson is sued individually.

31. At all times relevant hereto, Defendant Gus Cabazuda was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in his capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Cabazuda is sued individually

32. Defendants Illinois Department of Human Services ("Defendant State") and Elgin Mental Health Center ("Facility" or "State Facility") are Illinois body publics and legal entities responsible for themselves and for the Elgin Mental Health Center. These Defendants employ the individual Defendants and are proper entities to be sued under 42 U.S.C. § 1983.

33. At all times relevant hereto, Defendant Jeffrey Pharis was a citizen of the United States and a resident of the State of Illinois. Defendant Jeffrey Pharis is sued in his official capacity as the Chief of the Elgin Mental Health Center, employed by the Defendant Illinois Department of Human Services and/or the Elgin Mental Health Center, and was acting under color of state law.

34. As the Chief of the Elgin Mental Health Center, Defendant Jeffrey Pharis both exercised and delegated his final decision making power to the staff and the individual Defendants of the Elgin Mental Health Center. On information and belief, he

also trained and supervised individual Defendants.

35. Defendant State and Defendant Facility/State Facility and Defendant Jeffrey Pharis are properly sued directly under 42 U.S.C. § 1983 for their own and their delegated deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in the complained of constitutional and statutory violations and resulting injuries.

36. The Defendant State and Defendant Facility are also properly sued under 42 U.S.C. § 1983 for the challenged delegated final decisions of Defendant Jeffrey Pharis in his official capacity as the Chief of the Elgin Mental Health Center, and for those of any final delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices.

## IV.    STATEMENT OF FACTS

37. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were fully set forth at length.

38. At the time that the Plaintiff was asked to see the nurse, she was in her room, sitting and calmly speaking to her roommate.

39. At the time that the Plaintiff was asked to see the nurse, she was not creating a threat to herself, other patients or staff.

40. Defendant Zella Napier made the initial contact with Plaintiff during this request to

visit the nurse.

41. Defendant Zella Napier instructed Plaintiff to see the nurse and the Plaintiff objected to any necessity to her going to see the nurse for any medical reason.

42. Defendant Zella Napier observed the Plaintiff in her room and the Plaintiff did not threaten the Defendant Zella Napier, other patients or staff and the Plaintiff did not have any weapons.

43. Defendant Defendant Zella Napier next told the Plaintiff to walk to see the nurse and, although the Plaintiff verbally stated that she did not want to see the nurse, the Plaintiff volunteered to see the nurse in full compliance with the Defendant Zella Napier's order and without threat of harm to herself, Defendant Zella Napier or any other person.

44. Defendant Defendant Zella Napier escorted the Plaintiff from her room to the medical treatment room, a distance of over 100 feet, without resistance, threat of harm, argument or any other action by the Plaintiff that would have required her to be restrained for any reason whatsoever.

45. Defendant William Epperson, a security guard, and Defendant Gus Cabazuda, a security guard, confronted the Plaintiff in the men's day room and accompanied her to the medical treatment room; and at the time that these Defendant security guards confronted her, the Plaintiff presented herself in a cooperative, calm and compliant fashion, and she represented no risk or threat of harm to herself, the staff or other patients of the facility.

46. During this time, Defendant Gloria Langunilla, a nurse, was positioned in the medical treatment room, and Defendant Gloria Langunilla had prepared a syringe to forcibly deliver a shot of Lorazepam, a narcotic sedative, a powerful drug that causes sedation and

other side effects, to be delivered forcibly to the Plaintiff's body.

47. Defendants William Epperson and Gus Cabazuda used excessive force handling the body of the Plaintiff in order to bend her over at the waist, pull her pants down and permit the forcible drugging of the Plaintiff by Defendant Gloria Langunilla while Defendant Zella Napier stood by and watched.

48. The Plaintiff objected to the administration of the unnecessary drugs, and to the excessive use of force against her body, and to forced drugging without following such due process of law as is promulgated by the State of Illinois.

49. Plaintiff's statements were constitutionally protected speech under the First Amendment to the United States Constitution and her right to due process under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

50. The Plaintiff did not struggle or resist the Defendants unwanted and forcible pinning of her body either before or during the incident but acted deferentially and submitted to the Defendants further showing that she was not a threat.

51. The individual Defendants were irate at the Plaintiff's questioning of their legal authority by a patient.

52. While Defendants held the Plaintiff down, Defendant William Epperson said "you don't want us to put you in restraints" so as to threaten the Plaintiff with additional force, intimidate her and humiliate her should she not continue to submit to being held down, stripped and drugged.

53. All of the actions of the Defendants were done without any justification or provocation.

54. As a result of the actions of the Defendants, Plaintiff was drugged and suffered humiliation and exacerbation of her inability to make progress toward recovery and she experienced, and continues to experience, traumatic effects in her body from drugs and a hostile, unstable living environment.

55. To provide cover and divert from liability for the initiation and continuation of this unprovoked attack, Defendant Marva Stroud and Defendant Velma Westbrook falsely and outrageously fabricated information in the Plaintiff's treatment chart.

56. Defendant Marva Stroud fabricated and planted evidence in the Plaintiff's chart, knowing it to be false and that it would be used to justify the retaliation against the Plaintiff for questioning the arbitrary removal of Plaintiff's snack privilege earlier that day.

57. Defendants William Epperson, Gus Cabazuda and Gloria Langunilla battered the Plaintiff, subjecting her to excessive and unreasonable force.

58. Plaintiff was battered and forced to endure humiliating exposure by removal of her clothing and injection of harmful, dangerous and medically unnecessary drugs.

59. All of the individual Defendants engaged in this unprovoked attack. None of the Defendants took any steps to protect the Plaintiff against the other Defendants' use of excessive force, despite being in a position and having a duty to do so.

60. Amplifying the excessive nature of the scene is the fact that Defendant guards clandestinely positioned themselves after Defendant Zella Napier used trickery to make the Plaintiff vulnerable to this one-sided attack.

61. The additional force by additional staff was also not remotely justified.

62. Immediately following the attack, the Plaintiff requested an attorney call.

63. Defendant William Epperson attempted to dissuade the Plaintiff from reporting the attack to legal counsel, stating, "Your attorney won't be available now."

64. Plaintiff proceeded to insist on her right to contact her attorney, and only after much insistence was Plaintiff given the right to call her attorney and leave him a message.

65. In their angst to divert liability and cover up their brutal attack on a defenseless patient and/or, on information and belief, with knowledge that Plaintiff had already complained against them to her counsel, Defendant guards, nurses and STAs next conspired and/or acted in concert to have Plaintiff falsely accused of threatening the staff, other patients and acting in a harmful way to herself by fabrication of information in the Plaintiff's medical chart.

66. At the time of this incident, Plaintiff was an unarmed, female about 165 pounds, 5' 1" tall, 47-year-old woman who was no match for two grown guards.

67. As Defendant Marva Stroud falsely reported in her far-fetched chart statement: "(Plaintiff was) continuing to walk closer to Velma I then step (sic) in front of her and again tried to redirect her but she still wouldn't stop she then tried to get around me to get at Velma. The nurse tried to intervene but she still wouldn't stop so security was called. ~~No other ine~~ then security intervene."

68. Defendant Velma Westbrook amplified Defendant Marva Stroud's false story. She falsely reported that even the threat of violence and intimidation tactics of the arbitrary privilege restriction had no effect, requiring the battery and forced drugging: "(Plaintiff was) loud and disrupted (sic), causing the

11

mileu (sic) to be unstable making other residents agitated."

69.     All of the above-described acts were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Plaintiff's federally protected rights, and were done pursuant to the preexisting and ongoing deliberately indifferent official custom, practice, decision, policy, training, and supervision of the Defendant State and Defendant Jeffrey Pharis acting under color of state law.

70.     With deliberate indifference to the rights of citizens to be free from excessive force, the Defendant State and Defendant Jeffrey Ferris have ongoingly encouraged, tolerated, ratified, and acquiesced to a dangerous environment of patient brutality and unlawful drugging by:

a.  failing to conduct sufficient training or supervision with respect to the constitutional limitations on the use of force and unlawful forced drugging;

b.  by failing to adequately punish unconstitutional uses of force and unlawful forced drugging;

c.  by tolerating the use of unconstitutional force and unlawful forced drugging;

d.  by ongoingly failing to properly or neutrally investigate complaints of excessive force and unlawful forced drugging; and,

e.  by tolerating, encouraging, and permitting collusive statements by involved Defendants and other staff of the State in such situations.

71.     It is the longstanding, widespread, deliberately indifferent custom, habit, practice and/or policy of the Defendant State, Defendant Jeffrey Pharis and the Defendant Facility to permit staff members to use excessive force, battery and

unlawful forced drugging against individuals when such use is unnecessary and unjustified, as well as to fail to supervise and to train staff in the appropriate constitutional limits on the use of force and forced drugging, knowing that these staff members are significant to the protection of the constitutional rights of the patients and therefore pose a significant risk of injury to the public who are patients at the Defendant Facility.

72.     The Defendant State and Defendant Jeffrey Pharis have attempted to publicly minimize and cover up the egregious record of excessive force and unlawful forced drugging by the Elgin Mental Health Facility by repeatedly and frequently petitioning for court-ordered, lawful forced drugging of patients; however, when challenged to provide evidence of any medical necessity and/or threat to the public, staff, patients or the accused in those rare cases where such petitions are zealously litigated, the Defendant State merely withdraws the falsely presented sworn court documents, retaining the use of excessive force and forced drugging as a tactic to punish patients of the Defendant Facility and for no legitimate purpose or treatment.

73.     With deliberate indifference to the rights of citizens to be free from excessive force in law enforcement, the Defendant State and Defendant Jeffrey Pharis have ongoingly encouraged, tolerated, ratified, and acquiesced to unconstitutional and abusive uses of force and forced drugging under the auspices of "mental health treatment" by:

a. failing to conduct sufficient training or supervision with respect to the rights of citizens to be free from force and forced drugging in mental health facilities;

      b.  failing to adequately punish retaliatory forced drugging actions;

      c.  ongoingly tolerating unlawful forced drugging, excessive force, and manipulation-based selective treatment among the staff and in decisions regarding the ongoing incarceration of those found Not Guilty by Reason of Insantiy; and

      d.  failing to properly investigate complaints of unlawful forced drugging, use of medical charts for punishment of patients, animus based on a patients' unwillingness to be forcibly drugged, and toleration of collusive statements by involved staff in such situations.

74.  It is the longstanding, widespread,  deliberately indifferent custom, habit, practice and/or policy of the Defendant State, Defendant Jeffrey Pharis and Defendant Facility to permit staff to use force, forced drugging and animus against patients who refuse psychotropic drug "treatment" as motivating factors in staff decisions and actions, as well as to fail to supervise and to train staff in the rights of citizens to be free from unconstitutional, violent actions and collusive decision making by facility staff.

75. With deliberate indifference to the rights of citizens to be free from retaliation for exercising their constitutional rights, the Defendant State and Defendant Jeffrey Pharis have ongoingly encouraged, tolerated, ratified, and acquiesced to a dangerous environment of staff retaliation to the exercise of such rights by:

      a.  failing to conduct sufficient training or supervision with respect to the protected speech and due process rights of citizens to question the actions of staff without retaliation;

      b.  failing to adequately punish retaliation by staff against the public who are patients at the facility and who exercise their protected speech and due process rights to object to staff conduct;

c. tolerating the use of retaliation based on protected speech and due process rights; and

d. ongoingly failing to properly investigate complaints of retaliation for exercising their constitutional rights.

76, It is the longstanding, widespread, deliberately indifferent custom, habit practice and/or policy of the Defendant State, Defendant Jeffrey Pharis and the Defendant Facility to permit staff members to retaliate against individuals for exercising First Amendment Rights, as well as to fail to supervise and to train staff in the constitutional rights of individuals.

77. With deliberate indifference to the rights of citizens to be free from excessive use of force and forced drugging, the Defendant State and Defendant Jeffrey Pharis have ongoingly encouraged, tolerated, ratified, and acquiesced to the excessive force and forced drugging of the patients and the cover up of efforts by staff when they have failed to investigate complaints of staff misconduct, instead accepting "medical chart" accounts of events without question and rubber stamping any staff accounts given.

78. It is the longstanding and widespread custom, habit, practice and/or policy of the Defendants State, Jeffrey Pharis and Facility to find no fault with staff conduct as long as any story is offered by staff, regardless of how incredible.

79. The senior staff routinely ratifies, acquiesces, rubber stamps, and tolerates the malicious collusive conduct and unconstitutional actions of staff by routinely ignoring serious complaints of retaliatory forced drugging and other violent retaliation, as well as fabrication of evidence by the staff.

80. The Defendants State and Jeffrey Pharis did exactly that in this case,

deciding through "medical chart" data to ratify and declare within policy these unconstitutional, violent and retaliatory actions with a bogus, insufficiently investigated and partial finding of justifiable use of violent and harmful force and forced drugging by the staff involved.

81. These final policy decisions by Defendant Jeffrey Pharis in his role as the final delegated policy decision maker with respect to reviewing misconduct create liability for Defendant State and Defendant Jeffrey Pharis. They are also further evidence of the ongoing and deliberately indifferent custom, habit, policy, decision, practice, training and supervision of the staff of the Defendant Facility, wherein the Defendants State and Jeffrey Pharis tolerate and encourage lawlessness and disregard for the federal rights of patients.

82. In the period addressed by this Complaint, and before and since the events described herein, Defendant Jeffrey Pharis has declared or suggested that other complaints of excessive force and unlawful forcible drugging and outrageous actions by staff were unfounded, without serious investigation, and he has provided cover-up support to members of the staff who were violating the constitutional and statutory rights of patients.

83. On information and belief, because of this utter failure of supervision and oversight, other patients have been hurt by at least some of the same Defendants named in this Complaint, who have been the subject of complaints both prior to and since May, 2014, and these injuries are ongoing to the present time.

84. As a direct and proximate result of the wrongful conduct of each of the Defendants, Plaintiff has been substantially injured. These injuries include, but are

not limited to, loss of constitutional and federal rights, physical injuries, physical and mental impairments and disfigurement, great pain and emotional distress, and/or aggravation of pre-existing conditions, and ongoing special damages for medically/psychologically related treatment caused by the unconstitutional and brutal concerted conduct of all these Defendants.

85. The Plaintiff is now suffering from these injuries, with an inability to consistently live without fear of retaliation from the very staff charged with the responsibility to enable her treatment or rehabilitation.

86. The Plaintiff also suffers persisting emotional damage the extent of which has not yet been fully ascertained. Plaintiff continues to suffer ongoing emotional distress, with significant stress related symptoms, including fear, sadness, humiliation, anxiety, stress, anger, depression, frustration, sleeplessness, nightmares and flashbacks, from being violently treated like this.

87. Plaintiff is also entitled to punitive damages on all of her claims against the individual Defendants personally, to redress their willful, malicious, wanton, reckless and fraudulent conduct.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - Excessive Force in violation of the
### Fourth and Fourteenth Amendments (Against Defendants Stroud,
### Westbrook, Napier, Epperson, Cabazuda and Langunilla)

88.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth at length herein.

89. Relevant portions of 42 U.S.C. § 1983 provide that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

90. Plaintiff in this action is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

91. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as staff of the State and/or Defendant Facility and their acts or omissions were conducted within the scope of their official duties or employment.

92. At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in her person from unreasonable seizure through excessive force.

93. Plaintiff also had the clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by the staff of the State.

94. Any reasonable person knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

95. The actions and use of force by Defendants Stroud, Westbrook, Napier, Ep1person, Cabazuda, and Langunilla, as described herein, were

18

objectively unreasonable in light of the facts and circumstances confronting them, and these actions violated these Fourth Amendment rights of Plaintiff.

96.   The actions and use of force by Defendants Stroud, Westbrook, Napier, Epperson, Cabazuda and Langunilla, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The force and failure to protect the Plaintiff's constitutional rights, and the use of unlawful forced drugging by these Defendants violated the Fourteenth Amendment rights of Plaintiff.

97. Defendants Stroud, Westbrook, Napier, Epperson, Cabazuda and Langunilla unlawfully seized Plaintiff by means of deception, objectively unreasonable and false accusations, excessive and shocking physical force, thereby unreasonably restraining Plaintiff of her freedom.

98.   The force used constituted aggravated battery in that it could have caused and did cause serious bodily injury through use of drugs.

99.   None of the Defendants took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force of other Defendants or from the excessive force of later unlawful forced drugging despite being in a position to do so. The Defendants are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other Defendant.

100. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

101. They did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

102. The acts or omissions of all individual Defendants were the direct and proximate causes behind Plaintiff's injuries.

103. These individual Defendants acted in concert and joint action with each other.

104. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional rights and caused her other damages.

105. These individual Defendants are not entitled to qualified immunity for the complained of conduct.

106. The Defendants to this claim, at all times relevant hereto, were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

107. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts in excess of the jurisdictional limit.

108. On information and belief, Plaintiff may suffer lost abilities to recover in the environment she resides in and may further suffer physical and emotional pain from ongoing and continued loss of society through the prolonged incarceration and remediation of false reports used to cover-up Defendants retaliatory use of excessive force and unlawful forced drugging. Plaintiff is further entitled to attorneys' fees and

costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

109. In addition to compensatory, economic  and consequential damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under  42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### SECOND CLAIM FOR RELIEF
**42 U.S.C. § 1983 – Excessive Use of Physical Force and Unlawful Drugging in Violation of the Cruel and Unusual Punishments Clause of the Eight Amendment to the Unites States Constitution (Against Defendants Stroud, Westbrook, Epperson, Cabazuda, Napier and Langunilla)**

110. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

111. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

112. Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

113. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as employees of Defendant State

and their acts or omissions were conducted within the scope of their official duties or employment.

114. At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from cruel and unusual punishments as protected by the Eight Amendment to the United States Constitution.

115. The objective component of Plaintiff's claim is that the actions of the Defendants, and each of them, in the context and circumstances where the Plaintiff represented no threat of harm to herself, other patients or staff violates the contemporary standards of decency.

116. The Defendants, and each of them, conducted a malicious and sadistic use of force to cause harm to the Plaintiff by forcing her to submit to administration of drugs, unlawful bodily touching and stripping away her clothing by two male staff members violates contemporary standards of decency, regardless of whether or not significant injury is evident.

117. The Defendants' excessive force exceeded any reasonable use of force as no force was required whatsoever. The use of force to pull the Plaintiff's pants down while holding her down over an examination table bent at the waste and exposing her to male staff is a use of force so repugnant as to shock the conscience of mankind.

118. The Defendants, and each of them, stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause because the force was not applied in a good-faith effort to maintain or restore discipline but rather to maliciously and sadistically cause harm to the Plaintiff.

119.  The Defendants, and each of them, used force in a willful, wanton and unnecessary fashion as no need for application of any force was evident when compared with any threat reasonably perceived by the responsible staff,

120. At all times herein, the Defendants (1) acted under color of state law and (2) the Plaintiff was deprived of rights secured by the Constitution under the Eighth Amendment.

121.  The Defendants, and each of them, failed to intercede to prevent the sadistic and violent use of force and unlawful forced drugging as each Defendant had a realistic opportunity to intercede and prevent the violation of her rights.

122. The Defendants, and each of them, prior to committing the violence against the Plaintiff as well as in an effort to cover up such violence, made false allegations against Plaintiff, to secure her in a remote location free from witnesses, so as to place Plaintiff in danger of physical violence and as a means of punishing, humbling and/or silencing plaintiff into refraining from questioning arbitrary restrictions and her decision to be free from the administration of drugs.

123. Any reasonable staff member knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

124. Plaintiff's exercise of her right to free speech and her statutory right to be free from drugging was a motivating factor in the decisions to use excessive force and then maliciously batter the person of the Plaintiff and then cover-up the retaliation with false charges in the Plaintiff's "medical chart".  Defendants' conduct was undertaken with the purpose of depriving Plaintiff of the equal protection and benefits of the law,

equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment and the Eighth Amendment Cruel and Unusual Punishments Clause.

125. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected rights.

126. The acts or omissions of all individual Defendants were the direct and proximate causes behind Plaintiff's injuries.

127. The individual Defendants acted in concert and joint action with each other.

128. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

129. Defendants are not entitled to qualified immunity for the complained of conduct.

130. The Defendants to this claim at all times relevant hereto were acting pursuant to state/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

131. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory damages, in amounts in excess of the jurisdictional limit.

132. On information and belief, Plaintiff may suffer lost abilities to recover in the environment she resides in and may further suffer physical and emotional pain

from ongoing and continued loss of society through the prolonged incarceration and remediation of false reports used to cover-up Defendants' retaliatory use of excessive force and unlawful forced drugging. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

133. In addition to compensatory, economic  and consequential, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.


THIRD CLAIM FOR RELIEF
42 U.S.C. § 1983 -Retaliation in Violation of the First
Amendment (Against Defendants **Stroud, Westbrook,
Epperson, Cabazuda, Napier and Langunilla**)

134.  Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth at length herein.

135. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

136. Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

137. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as staff members of the State and their acts or omissions were conducted within the scope of their official duties or employment.

138. At the time of the complained of events, Plaintiff the clearly established constitutional right to be free from retaliation for the exercise of protected speech.

139. Any reasonable staff member knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

140. Plaintiff exercised her constitutionally protected right to question staff for the arbitrary enforcement of restrictions and to exercise her statutory right to refuse drugs and/or engaged in protected speech related to the constitutional rights of citizens with respect to seizures of their body by the State and objectionable conduct by staff of State.

141. Retaliatory animus for Plaintiff's exercise of her constitutionally protected right to question staff regarding the scope of their legal authority to restrict patients, seize the body of a patient, force the person of the Plaintiff to medical treatment through the use of battery and forced drugging upon the Plaintiff as a condition of her obtaining release was a substantially motivating factor in the excessive force used by individual Defendants.

142. The excessive force used against Plaintiff in retaliation for her protected conduct would deter a person of ordinary firmness from continuing to engage in the protected conduct.

143.  All of these Defendant staff participated in this use of force as a means of retaliation for Plaintiff's exercise of her protected speech and none of the Defendant staff took reasonable steps to protect Plaintiff from this retaliation for the exercise of her protected speech. They are each liable for the injuries and damages resulting from the objectively unreasonable conduct that shocks the conscience of mankind.

144.  Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

145.  The acts or omissions of all individual Defendants were direct and proximate causes behind Plaintiff's injuries and deprivation of her rights.

146. The individual Defendants acted in concert and joint action with each other.

147. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

148.  Defendants are not entitled to qualified immunity for the complained of conduct.

149. The Defendants to this claim at all times relevant hereto were acting pursuant to State/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

150. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory damages, in amounts in excess of the jurisdictional limit.

151. On information and belief, Plaintiff may suffer lost abilities to recover in the

environment she resides in and may further suffer physical and emotional pain from ongoing and continued loss of society through the prolonged incarceration and remediation of false reports used to cover-up Defendants retaliatory use of excessive force and unlawful forced drugging. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

152.  In addition to compensatory, economic  and consequential, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## FOURTH CLAIM FOR RELIEF
42 U.S.C. § 1983 - Unlawful Seizure in violation of the
Fourth and Fourteenth Amendments (Against Defendants **Stroud, Westbrook,
Epperson, Cabazuda, Napier and Langunilla**.)

153.  Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein

154.  42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation,
> custom or usage of any state or territory or the District of Columbia
> subjects or causes to be subjected any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges or immunities secured by the constitution and law
> shall be liable to the party injured in an action at law, suit in equity, or
> other appropriate proceeding for redress . . .

155. Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

156. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as staff of the State and their acts or omissions were conducted within the scope of their official duties or employment.

157. At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from seizure of her body without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

158. Any reasonable staff member knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

159. Individual Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from seizure without probable cause and without due process when they worked in concert to secure false charges against her, conducted an internal non-judicial process "prosecuting" the Plaintiff as part of an unofficial internal system of justice, fabricated information in the Plaintiff's "medical chart" resulting in her unlawfully being subjected to seizure as punishment without probable cause and without due process of law.

160. Individual Defendants conspired and/or acted in concert to institute, procure and continue a plot or plan whereby a clandestine proceeding within the Defendant Facility "prosecuted" the Plaintiff for false and malicious charges of being a threat to

other patients and staff.

161. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

162. The procurement of the clandestine prosecution against Plaintiff for the known to be false allegations of threatening others was malicious, shocking, and objectively unreasonable in the light of the circumstances.

163. The internal "quasi-criminal" proceedings resulted in the bodily seizure of the Plaintiff wherein she was subjected to being stripped from behind and injected with harmful drugs.

164. The acts or omissions of all individual Defendants were the direct and proximate causes behind Plaintiff's injuries.

165. These individual Defendants acted in concert and joint action with each other.

166. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

167. Defendants are not entitled to qualified immunity for the complained of conduct.

168. The Defendants to this claim at all times relevant hereto were acting pursuant to State/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in its actions pertaining to Plaintiff.

169. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory damages, in amounts in excess of the

jurisdictional limit.

170. On information and belief, Plaintiff may suffer lost abilities to recover in the environment she resides in and may further suffer physical and emotional pain from ongoing and continued loss of society through the prolonged incarceration and remediation of false reports used to cover-up Defendants retaliatory use of excessive force and unlawful forced drugging. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

171. In addition to compensatory, economic and consequential, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## FIFTH CLAIM FOR RELIEF
Violation of 42 U.S.C. § 1983 -Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth, Fourteenth, and First Amendments (Against Defendant State, Defendant Facility and Defendant Jeffrey Pharis only)

172. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

173. 42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

174. Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

175. The Defendants to this claim at all times relevant hereto were acting under the color of state law.

176. Plaintiff had the following clearly established rights at the time of the complained of conduct:

    a.  the right to be secure in her person from unreasonable seizure through excessive force and forcible drugging, under the Fourth Amendment;

    b.  the right to bodily integrity and to be free from excessive force by State's staff under the Fourteenth Amendment;

    c.  the right to exercise her constitutional rights of free speech under the First Amendment without retaliation;

    d.  the right to be free from Cruel and Unusual Punishments as guaranteed by the Eighth Amendment; and,

    e.  the right to be free from seizure without probable cause under the Fourth and Fourteenth Amendments.

177. Defendant Jeffrey Pharis, Defendant Facility and Defendant State knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

178. The acts or omissions of these Defendants, as described herein, deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

179. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

180. Defendants are not entitled to qualified immunity for the complained of conduct.

181. Defendant Jeffrey Pharis, Defendant Facility and Defendant State were, at all times relevant, policymakers for the Defendant Facility, Defendant State and Defendant Facility, and in that capacity established policies, procedures, customs, and/or practices for the same.

182. These Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were direct and proximate causes behind the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, all of which resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

183. Defendant Jeffrey Pharis, Defendant Facility and the Defendant State have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, institution-wide customs, punishment and enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its staff in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

184. In light of the duties and responsibilities of those staff that participate in controlling/redirecting the behavior of recipients of services and preparation of reports on alleged threats to others, the need for specialized training and supervision is so

obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

185. The deliberately indifferent training and supervision provided by Defendant State, Defendant Facility and Defendant Jeffrey Pharis resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant State, Defendant Facility and Defendant Jeffrey Pharis and were direct and proximate causes in the constitutional and federal violation injuries complained of by Plaintiff.

186. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory damages, in amounts in excess of the jurisdictional limit.

187. On information and belief, Plaintiff may suffer lost ability to recover in the environment she resides in and may further suffer physical and emotional pain from ongoing and continued loss of society through the prolonged incarceration and remediation of false reports used to cover-up Defendants retaliatory use of excessive force and unlawful forced drugging. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

188. Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to redress Defendants' above described ongoing deliberate indifference

in policies, practices, habits, customs, usages, training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the State in failing to investigate or appropriately handle complaints of the same, which Defendants have no intention for voluntarily correcting despite obvious need and requests for such correction.

## VI.    PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial and in excess of the jurisdictional limit;

B. economic losses on all claims allowed by law;

C. punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial and in excess of the jurisdictional limit;

D. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

E. pre- and post-judgment interest at the lawful rate; and,

F. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted,

_____
S. Randolph Kretchmar
One of the Attorneys for Plaintiff

Law Offices of Kretchmar and Cecala, PC.
1170 Michigan Avenue
Wilmette, IL 60091
847-370-5410
s_randolph@earthlink.net
jcecala@expansionfunding.com