UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCI WEBBER,<br><br>    Plaintiff,<br><br>    v.<br><br>JEFFREY PHARIS, et al.,<br><br>    Defendants. | No. 14 CV 5987<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, who is involuntarily committed to the Elgin Mental Health Center, alleges that her constitutional rights were violated when the Center's staff manhandled her and forcibly injected her with a sedative. Plaintiff brings suit under 42 U.S.C. § 1983 against ten workers at the Center, the Center itself, its chief, and the Illinois Department of Human Services. These defendants now all move to dismiss plaintiff's amended complaint for failure to state a claim and lack of subject-matter jurisdiction. For the following reasons, defendants' motion is granted in-part, and denied in-part.

**I.   Legal Standard**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of

what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). In reviewing the sufficiency of a complaint, a court accepts the well-pleaded facts as true. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

If a defendant challenges the sufficiency of the allegations regarding subject-matter jurisdiction, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *G & S Holdings LLC v. Continental Casualty Co.*, 697 F.3d 534, 539 (7th Cir. 2012). "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raises the jurisdictional challenge . . . ." *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008).

## II. Background

On May 3, 2014, plaintiff Marci Webber, who is confined to the Elgin Mental Health Center,[1] was seated in the facility's day room. [8] ¶¶ 1-2. Around 7:35 p.m., plaintiff learned from a fellow patient that her snack-time privileges had been restricted by defendant Marva Stroud.[2] *Id.* ¶ 3. When plaintiff entered the dining

---

[1] Although not stated explicitly in her complaint, plaintiff was committed to the Elgin Mental Health Center after a determination that she was not guilty of murder by reason of insanity. *See People v. Webber*, 2010CF002643 (Cir. Ct. DuPage County); *see also 520 South Michigan Avenue Associates v. Shannon*, 549 F.3d 1119, 1138 n. 14 (7th Cir. 2008) (courts may take judicial notice of state-court decisions without converting a motion to dismiss into a motion for summary judgment).

[2] The amended complaint identifies Stroud as a Center employee, but does not specify her role or title. *See* [8] ¶ 27.

room shortly thereafter, she was accosted by Stroud who shouted, "You're not coming in here, you're not coming in here!" *Id*. ¶¶ 4-5. Defendant Velma Westbrook[3] quickly approached plaintiff as well, sticking her finger in plaintiff's face and shouting at plaintiff to leave the dining room. *Id*. ¶ 6. Plaintiff responded by saying, "I need to know why I can't come in." *Id*. ¶ 7. Westbrook once more put her finger in plaintiff's face, brought her own face close to plaintiff's, and shouted "You're not getting any snack, you're restricted!" *Id*. ¶ 8. Plaintiff said, "You need to get out of my face," to which Westbrook replied, "Move me, move me!" *Id*. ¶ 9. Plaintiff responded: "You're trying to provoke me so you can make stuff up in my chart." *Id*. ¶ 10. "That's right," Westbrook said, "I'm going to make stuff up and put it in your chart." *Id*. ¶ 11.

At this point, Stroud stepped in between plaintiff and Westbrook such that Stroud and Westbrook were "simultaneously threatening physical violence towards [plaintiff]." *Id*. ¶ 12. Plaintiff walked away from the dining room entrance and calmly returned to her room. *Id*. ¶ 13. Back at her room, plaintiff calmly spoke with her roommate for about 15 minutes. *Id*. ¶ 14.

At approximately 7:55 p.m., defendant Zella Nappier, a security guard, arrived at plaintiff's room and told her the nurse wanted to see her. *Id*. ¶ 15. Plaintiff followed Nappier down the hallway to the men's day room, where plaintiff was confronted by two additional security guards, defendants William Epperson and Gus Cabezudo. *Id*. ¶ 16. The three security guards escorted plaintiff another 40

---

[3] The amended complaint identifies Westbrook as a Center employee, but does not specify her role or title. *See* [8] ¶ 28.

feet to the nurse's station. *Id.* ¶ 17. Plaintiff was directed to follow defendant Gloria Lagunilla, a nurse, into the examination room. *Id.*

Once in the room, Epperson and Cabezudo grabbed plaintiff from behind. *Id.* ¶ 18. The two guards secured her arms and thighs, and—bending her body 90 degrees—forced her torso onto an examination table. *Id.* While plaintiff was incapacitated in this manner, Lagunilla pulled her pants down to expose her buttocks and injected her with Lorazepam—a narcotic sedative. *Id.* ¶¶ 19, 51.

Following the injection, plaintiff asked to call her lawyer, which she was permitted to do. *Id.* ¶ 20. She then calmly returned to her room, where she sobbed and cried profusely. *Id.* ¶ 21.

On September 16, 2014, the substantially same events took place, except involving defendants Syed Hussain, Criselda Rana, Ryma Jacobson, and Vicky Sandhu. *Id.* ¶ 22. The amended complaint provides no more information about these additional events or defendants.

Plaintiff's five-count amended complaint seeks redress under 42 U.S.C. § 1983 for violations of her first-, fourth-, eighth-, and fourteenth-amendment rights. In addition to naming all the defendants identified above, plaintiff names the Illinois Department of Human Services, the Elgin Mental Health Center, and the Center's chief, Jeffrey Pharis.

## III. Analysis

### A. Defendants Hussain, Rana, Jacobson, and Sandhu

Hussain, Rana, Jacobson, and Sandhu move to dismiss Counts I through IV on the ground that the amended complaint is devoid of any allegations addressing how any of their specific acts or omissions were unconstitutional. In total, plaintiff's amended complaint says the following about these four defendants: (1) it identifies each of their citizenships, residencies, and employments (*see* [8] ¶¶ 33-36); (2) it names them as defendants in the headings to Counts I through IV (*id*. at 19, 22, 26, 29); and (3) it alleges that (*id*. ¶ 22):

> On September 16, 2014, at approximately 10:00 AM, Defendants Syed Hussain, Chriselda Rana, Ryma Jacobson and Vicky Sandhu, along with some others named in this complaint or unnamed, again forcibly injected medication into Plaintiff Webber's body, in an incident substantially repeating the pattern and circumstances, with only minor variations, from May 3, 2014, as described in paragraphs 2. through 21., above.

The amended complaint says nothing else about the alleged conduct of these four defendants, or, for that matter, about the events of September 16, 2014. Although Hussain, Rana, Jacobson, and Sandhu noted these deficiencies in the memorandum in support of their motion to dismiss, plaintiff did not specifically respond to the issue in her brief.

Plaintiff's amended complaint is insufficient as to these four defendants. Although it is clear plaintiff claims that on September 16, 2014 she was forcibly injected in violation of her constitutional rights, she gives no indication of what role any single one of these defendants actually played in the episode, or why any single person's conduct amounted to a constitutional violation. Because plaintiff has not

5

given defendants Hussain, Rana, Jacobson, or Sandhu any useful notice of the four claims against them, Counts I through IV are dismissed as to them.

## B. Counts I, II, and IV

Plaintiff frames her first claim as "Excessive Force in violation of the Fourth and Fourteenth Amendments," her second claim as "Excessive Use of Physical Force and Unlawful Drugging in [v]iolation of the Cruel and Unusual Punishments Clause of the Eight[h] Amendment," and her fourth claim as "Unlawful Seizure in violation of the Fourth and Fourteenth Amendments." She brings these claims against all the individual-capacity defendants.

Defendants argue that Count IV should be dismissed as duplicative of Count I, because both counts complain of the same conduct: plaintiff's manhandling and forcible injection. Plaintiff does not respond to this argument. Defendants are correct that Count IV materially duplicates Count I. Although Count IV contains additional allegations about how defendants conducted falsified, quasi-judicial proceedings, these allegations do no more than explain how defendants arrived at their trumped-up justification for forcibly injecting plaintiff. Yet Count I is already premised on the assertion that plaintiff's manhandling and injection were baseless. To the extent these two counts actually do present separate theories of liability, plaintiff has chosen not to explain that. Count IV is dismissed as duplicative of Count I.

The constitutional source of a person's right to be free from abusive conduct depends on her relationship to the State at the time of the encounter. *See Kingsley*

6

*v. Hendrickson*, 744 F.3d 443, 448-49 (7th Cir. 2014). Here, plaintiff was involuntarily committed to a state institution after having been found not guilty by reason of insanity.[4]

In *Youngberg v. Romeo*, the Supreme Court made clear that the Eighth Amendment is not an appropriate source for determining the rights of the involuntarily committed. *See* 457 U.S. 307, 312 & 325 (1982); *see also Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977) ("the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). Count II, which plaintiff brings exclusively under the Eighth Amendment, is therefore dismissed.

Neither the Supreme Court nor the Seventh Circuit has directly addressed whether the involuntarily committed may seek relief under the Fourth Amendment for claims of excessive force. Nevertheless, circuit precedent suggests that, like

---

[4] In Illinois, when an individual has been acquitted of a crime by reason of insanity, his subsequent treatment is governed by 730 ILCS 5/5-2-4. This statute provides that, following the verdict, "the defendant shall be ordered to the Department of Human Services for an evaluation as to whether he is in need of mental health services." 730 ILCS 5/5-2-4(a). Once the Department conducts this evaluation, it must report its findings to the court, who in turn must hold a hearing to determine what services, if any, the defendant needs. *Id*. "If the defendant is found to be in need of mental health services on an inpatient care basis . . . [he] shall be placed in a secure setting [in the custody of the Department]." *Id*. Under the statute, the phrase "in need of mental health services on an inpatient basis" is defined as "a defendant who has been found not guilty by reason of insanity but who due to mental illness is reasonably expected to inflict serious physical harm upon himself or another and who would benefit from inpatient care or is in need of inpatient care." 730 ILCS 5/5-2-4(a-1)(B). So long as a defendant is deemed to need inpatient care, he "shall not be permitted to be in the community in any manner . . . ." 730 ILCS 5/5-2-4(b). However, every 60 days the director at the defendant's facility must file a treatment plan report, in which she gives her opinion as to whether the defendant is still in need of inpatient care. *Id*. The defendant also has the individual right to petition the court for treatment plan review, discharge, or conditional release. 730 ILCS 5/5-2-4(e).

7

pretrial detainees, the involuntarily committed must bring such claims under the Fourteenth Amendment alone.

In *Belbachir v. County of McHenry*, the court noted that a civilly detained alien whose detention was not in dispute, "was in the same position as a lawfully arrested pretrial detainee . . . who cannot complain of an unreasonable seizure in violation of the Fourth Amendment . . . ." 726 F.3d 975, 979 (7th Cir. 2013). The *Belbachir* court also recognized a similarity (albeit imperfect) between the constitutional statuses of its immigration-plaintiff and the mental-illness-plaintiff in *Youngberg*. 726 F.3d at 979. Likewise, in *Porro v. Barnes*, the Tenth Circuit held that the due process standard—not the standards under the Fourth Amendment—applied to the excessive-force claims of an immigration-detainee. 624 F.3d 1322, 1326 (10th Cir. 2010) ("And when neither the Fourth nor Eighth Amendment applies—when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities.")

Like an immigration detainee, plaintiff was past the moment of her initial seizure, so the Fourth Amendment did not apply to her interaction with defendants. Instead, the due process component of the Fourteenth Amendment provided plaintiff the right to be free from excessive force.[5] Count I is therefore dismissed to the extent it seeks relief under the Fourth Amendment.

---

[5] Defendants agree with this conclusion of law, and plaintiff failed to address the issue.

8

The Seventh Circuit has identified two separate—though conceptually overlapping—tests for analyzing excessive-force claims brought under the Due Process Clause. The first test is the same as that used under the Eighth Amendment: "'whether [the subject] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Carr v. Beth*, 465 Fed. App'x 567, 570-71 (7th Cir. 2012) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner." *Id.* In due-process cases applying this test, the courts have reasoned that because the Fourteenth Amendment affords a pretrial detainee at least as much (and probably more) protection as the Eighth Amendment affords a convicted prisoner, conduct that fails to pass eighth-amendment muster necessarily fails to satisfy the Fourteenth Amendment as well. *See, e.g.*, *Carr*, 465 Fed. App'x at 570-71.

Second, recognizing that an excessive-force claim under the Due Process Clause is premised on a person's right—prior to being convicted and sentenced—to be free from punishment, the Seventh Circuit has also framed the question as "whether a particular action was taken 'for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose.'" *Kingsley*, 744 F.3d at 449 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)).

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not,

9

without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Bell*, 441 U.S. at 539.

Finally, under either test, where the challenged conduct was performed in the medical context by a medical professional, it is presumed valid. *See Youngberg*, 457 U.S. at 323. This presumption may be overcome, and the medical professional may be subjected to liability, "only when the decision by the professional [was] such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the [professional] actually did not base the decisions on such judgment." *Id*.

*Defendant Lagunilla*

Lagunilla argues that Count I should be dismissed because plaintiff has not set forth allegations that overcome the presumption that her act of injecting plaintiff with medication was valid.[6] Plaintiff did not respond to this specific argument, but her complaint adequately rebuts the presumption of constitutional validity.

Plaintiff alleges that she tried to enter the dining room, was accosted by Stroud and Westbrook, asked them why she could not enter the dining room, told Westbrook to get out of her face, calmly returned to her room, and calmly spoke with her roommate. [8] ¶¶ 4-14. Thereafter, Lagunilla forcibly injected plaintiff with

---

[6] As a nurse, Lagunilla qualifies as a "professional" under *Youngberg*. *See McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013).

10

the narcotic sedative Lorazepam, which Illinois considers to be a psychotropic medication. *Id*. ¶¶ 19, 51; *see* 405 ILCS 5/1-121.1; *People v. Burgess*, 176 Ill.2d 289, 299 (1997).

These allegations, taken in the light most favorable to plaintiff, are sufficient at this stage of the case to rebut the presumption that Nurse Lagunilla's conduct was valid. It is plausible that forcibly injecting a patient who has shown no signs of violence, lack of cooperation, anxiety, or the like, could constitute such a substantial departure from accepted professional judgment so as to suggest that it was not actually based on such a professional judgment.

Lagunilla argues that "[a]t the very least, [she] relied on the information from Stroud and Westbrook." [12] at 8. This theory, however, is nowhere to be found in the amended complaint. Lagunilla cites no portion of the pleading in support of this argument, and an independent review of the document likewise turns up no allegations of Stroud or Westbrook communicating any information about plaintiff to Lagunilla.[7] By contrast, plaintiff alleges that her drugging was "baseless," which necessarily implies that neither Stroud nor Westbrook provided a basis for the use of force. *See* [8] ¶ 23.

Finally, Lagunilla argues that plaintiff is "not qualified to testify to her medical condition." [12] at 8. But plaintiff has not testified to her medical condition—she has filed an amended complaint whose allegations, at this stage of the litigation, are accepted as true.

---

[7] It is possible that "the nurse" in paragraph 67 refers to Lagunilla. However, plaintiff explicitly alleges that the contents of paragraphs 67 and 68, which reflect the contents of her medical chart, were fabricated by Stroud and Westbrook.

11

The motion to dismiss Count I is denied as to Lagunilla.

*Defendants Epperson and Cabezudo*

Epperson and Cabezudo argue that Count I should be dismissed because their alleged conduct—grabbing plaintiff from behind, securing her arms and thighs, and forcing her torso onto the examination table so Lagunilla could inject her—amounted to no more than non-actionable *de minimis* use of force. In *Washington v. Hively*, the Seventh Circuit announced that it was "time that the formula '*de minimis* uses of physical force' was retired," and that, instead, courts should approach the matter squarely on the merits. *See* 695 F.3d 641, 643 (7th Cir. 2012).

Under either the "malicious and sadistic" test or the "punishment" test, it is premature to dismiss Count I as to Epperson or Cabezudo. Factors relevant to whether conduct was "malicious and sadistic" include the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Carr*, 465 Fed. App'x at 570-71. Although the force applied here is not alleged to have been tremendous in amount or severity, plaintiff's allegations reveal no need for the use of any force at all. Likewise, the allegations do not support the conclusion that Epperson or Cabezudo reasonably perceived plaintiff to pose any threat.

Construed liberally, plaintiff's amended complaint can also be read to allege that Epperson and Cabezudo knew they were holding plaintiff in order to let Lagunilla administer a baseless injection. *See* [8] ¶¶ 15-16, 18, 23. As such, the

"harm" relevant to the present inquiry is not simply the rough manner in which defendants handled plaintiff, but also the fact that plaintiff was baselessly drugged. In sum, the complaint alleges that the application of force was not a good-faith effort to maintain or restore discipline, and therefore it plausibly supports the conclusion that Epperson and Cabezudo acted maliciously and sadistically to cause plaintiff harm.

As for the punishment test, these two defendants' alleged conduct could not have been "reasonably related to a legitimate governmental objective," *Bell*, 441 U.S. at 539, because there was no need to maintain order or sedate plaintiff in that moment. It is appropriate to then "infer that the purpose of the governmental action [was] punishment that [could] not constitutionally be inflicted upon" plaintiff. *Id*.

The motion to dismiss Count I is denied as to Epperson and Cabezudo.

*Defendants Stroud, Westbrook, and Nappier*

Stroud, Westbrook, and Nappier argue that plaintiff's amended complaint lacks any facts giving rise to a claim against them for excessive force under the Fourteenth Amendment. They note that plaintiff alleges only that (1) Stroud yelled at her and then stepped in between her and Westbrook, (2) Westbrook stuck her finger in plaintiff's face and then shouted at her, and (3) Nappier "escorted" plaintiff to the nurse's station (with plaintiff admitting she followed Nappier and volunteered to see the nurse in full compliance with Nappier's order). These defendants believe that "[p]lainitiff's allegations against Stroud and Westbrook do not allege any force was used or any injury suffered [and that] [h]er allegation

13

against Nappier does not specify what force, if any, was used." Once again, plaintiff does not respond to these specific arguments.

The amended complaint is devoid of any allegations tying Stroud, Westbrook, or Nappier to liability for excessive force under the Fourteenth Amendment. Stroud and Westbrook are alleged to have done nothing more than verbally harass plaintiff, and "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protections of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Similarly, Nappier is not alleged to have done anything other than speak with plaintiff and escort her down the hallway to the nurse's office. Such conduct clearly does not approach being either "malicious and sadistic" or "punishment".[8]

The motion to dismiss Count I is granted as to Stroud, Westbrook, and Nappier.

C.   **Count III**

Plaintiff frames her third claim as "Retaliation in Violation of the First Amendment," and she brings it against all the individual-capacity defendants. To state a claim for first-amendment retaliation, a plaintiff must allege that (1) she

---

[8] The question remains (perhaps) whether plaintiff could state an excessive force claim against Nappier on theories of aiding and abetting or a failure to intervene, on the ground that Nappier knowingly led plaintiff into the baseless drugging. While the amended complaint does contain some isolated language of this nature, s*ee, e.g.*, [8] ¶ 99 ("None of the Defendants took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force of other Defendants or from the excessive force of later unlawful forced drugging despite being in a position to do so. The Defendants are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other Defendant."), such offhanded boilerplate does not amount to an actual claim for relief, and is not adequately presented in the complaint.

14

engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter first-amendment activity in the future; and (3) the first-amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008).

Plaintiff claims defendants retaliated against her for exercising her right to free speech by using excessive force against her. *Id.* ¶¶ 140, 142. Plaintiff identifies three ways in which she exercised her right to free speech. First, she questioned the staff for the "arbitrary enforcement of restrictions" (presumably her snack restrictions). *Id.* ¶ 140. Second, she invoked her statutory right to refuse drugs. *Id.* Third, she "engaged in protected speech related to the constitutional rights of citizens with respect to seizures of their body by the State and objectionable conduct by staff of [the] State." *Id.*

Defendants argue that Count III should be dismissed because plaintiff's alleged speech did not involve matters of public concern. Although defendants' cited cases do speak of a "public concern" requirement for claims brought under the First Amendment, all of these cases arise in the distinguishable context of speech by public employees. *See Gustafson v. Jones*, 117 F.3d 1015, 1018 (7th Cir. 1997); *Khuans v. School District 110*, 123 F.3d 1010, 1014 (7th Cir. 1997); *Breuer v. Hart*, 909 F.2d 1035, 1037 (7th Cir. 1990); *Campbell v. Towse*, 99 F.3d 820, 827 (7th Cir. 1996).

In *Bridges v. Gilbert*, however, the Seventh Circuit explicitly held that the "public concern" test does not apply to the speech of prisoners. 557 F.3d 541, 550-52 (7th Cir. 2009); *see also Smego v. Payne*, 469 Fed. App'x 470, 475 (7th Cir. 2012) (applying *Bridges* to claim of involuntarily committed plaintiff, though not addressing "public concern" issue). In any event, a prisoner has a first-amendment right to make grievances about conditions of confinement, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012), and this principle applies to the involuntarily committed as it does to the imprisoned. Construed liberally, plaintiff can be understood as having done just that.

Defendants offer no alternative arguments for why Count III fails to state a claim. It is clear from the amended complaint, however, that Stroud, Westbrook, and Nappier are not alleged to have done anything that would be likely to deter first-amendment activity in the future. *See Bollinger v. Thawley*, 304 Fed. App'x 612, 614 (9th Cir. 2008) ("Mere harsh words or threats" did not constitute action "reasonably likely to deter employees from engaging in protected activity"). By contrast, Lagunilla's, Epperson's, and Cabezudo's alleged conduct would certainly deter a person from exercising her first-amendment rights.

The motion to dismiss Count III is denied as to Lagunilla, Epperson, and Cabezudo, and granted as to Stroud, Westbrook, and Nappier.

**D.     Count V**

Plaintiff frames her fifth claim as "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth,

16

Fourteenth, and First Amendment," and she brings this claim against the Illinois Department of Human Services, the Elgin Mental Health Center, and Jeffrey Pharis—the Center's chief. Defendants argue that because these three defendants are considered the State for the purposes of 42 U.S.C. § 1983, the Eleventh Amendment bars suits for money damages against them. *Velasco v. Illinois Department of Human Services*, 246 F.3d 1010, 1016 (7th Cir. 2001); *Knox v. McGinnis*, 998 F.2d 1405, 1412 (7th Cir. 1993); *see also Banks v. Dougherty*, 2010 WL 747870, *4 (N.D. Ill. Feb. 26, 2010) (Eleventh Amendment bars money-damages suit against Elgin Mental Health Center); *Johnson v. Elgin Mental Health Center*, 2008 WL 4900418, *1 (N.D. Ill. Nov. 12, 2008) (same); *Webb v. Isaac Ray Center*, 1990 WL 78332, *1 (N.D. Ill. June 1, 1990) (same). Plaintiff does not respond to this argument, and—as the above cited cases demonstrate—for good reason. Count V is dismissed to the extent it seeks money damages from these three defendants.

Defendants next argue that to the extent plaintiff seeks injunctive relief against the Department of Human Services, the Elgin Mental Health Center, or Pharis, plaintiff's allegations do not demonstrate standing to bring such a claim. A plaintiff lacks standing to sue under Article III of the Constitution unless she alleges an actual case or controversy. *Srivastava v. Newman*, 12 Fed. App'x 369, 372 (7th Cir. 2001). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'*Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). The mere possibility that a plaintiff will again be subjected to some injury

she previously endured is insufficient to show the immediate danger of direct injury so as to satisfy Article III. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiff's complaint alleges no threatened or imminent harm. Nor does she explain how such a prospective injury can be reasonably inferred from her allegations—in fact, plaintiff once more fails to respond to defendants' argument.

The motion is dismiss Count V is granted.

### IV.     Conclusion

Defendants' motion to dismiss [12] is granted in-part, and denied in-part.


ENTER:

_____
Manish S. Shah
United States District Judge

Date:  2/3/15