**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| MARCI WEBBER | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 5987 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Judge Manish Shah, |
| SYED HUSSAIN individually, GLORIA | ) | Presiding |
| LANGUNILLA individually, WILLIAM | ) | |
| EPPERSON individually, GUS CABAZUDA | ) | **JURY DEMAND** |
| individually, VICKY SANDHU individually, | ) | |
| and CRISELDA RANA individually, | ) | |
| | ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

**WITH REQUEST FOR TRIAL BY JURY**

Now comes the Plaintiff, Marci Webber, by and through her attorneys, the Law Offices of Kretchmar and Cecala, PC, with her complaint against the above named Defendants and requests trial by jury, and in support of her Complaint states as follows.

**I.     INTRODUCTION**

1

1.    This is an action brought by Marci Webber, a person confined to the Elgin Mental Health Center ("Facility"), to vindicate profound deprivations of her constitutional rights caused by institutionally based brutality.

### a) The first shot.

2.    On May 3, 2014, the Plaintiff, Marci Webber, a 47-year-old female was seated in the day room of the Defendant Facility at approximately 7:35 PM.

3.    At 7:35 PM Plaintiff Webber was informed by Loretta Vaughn, another patient at the Defendant Facility, that Plaintiff Webber and Loretta Vaughn were to be restricted from "snack time" privileges as ordered by staff member Marva Stroud. At the time, Plaintiff Webber was known to be defenseless.

4.    Shortly after 7:35 PM Plaintiff Webber along with numerous other patients at the Defendant Facility began to enter the dining room for the evening snack.

5.    Upon entering the dining room Plaintiff Webber was accosted by staff member Marva Stroud who shouted at Plaintiff Webber to leave the dining room, and stated, "You're not coming in here, you're not coming in here!"

6.    Staff member Velma Westbrook quickly approached Plaintiff Webber, stuck her finger in her face and shouted at Plaintiff Webber to leave the dining room.

7.    Plaintiff Webber asked, "I need to know why I can't come in."

8.    Again staff member Westbrook put her finger in Plaintiff Webber's face moving her face in extreme close proximity to Plaintiff Webber and shouting, "You're not getting any snack, you're restricted!"

9.    Plaintiff Webber said, "You need to get out of my face." To which Westbrook responded, "Move me, move me!"

10. Plaintiff Webber said, "You're trying to provoke me so you can make stuff up in my chart."

11. Staff member Westbrook said, "That's right, I'm going to make stuff up and put it in your chart."

12. Staff member Marva Stroud then stepped in between Westbrook and the Plaintiff such that both Stroud and Westbrook were simultaneously threatening physical violence towards Plaintiff Webber.

13. Plaintiff Webber then walked away from the dining room entranceway and calmly returned to her room.

14. Upon returning to her room, Plaintiff Webber spoke calmly with her roommate for approximately 15 minutes.

15. At approximately 7:55 PM security guard Zella Napier, came to Plaintiff Webber's room and indicated, "The nurse wants to see you."

16. Plaintiff Webber followed Napier down the hallway approximately 100 feet to the men's day room where Plaintiff Webber was confronted by Defendant William Epperson, a security guard, and Defendant Gus Cabazuda.

17. Plaintiff Webber was escorted by the two Defendant security guards and staff member Napier another 40 feet to the nurse's station and was directed to follow Defendant Gloria Langunilla, a nurse, into an examination area.

18. Plaintiff Webber was immediately grabbed by Defendant William Epperson, a security guard, and Defendant Gus Cabazuda from behind, securing her left and right arms and forcing her torso onto the examination table, bending her body 90° at the waist while simultaneously grabbing her thigh to force her to hold still.

19.    Defendant Gloria Langunilla then pulled Plaintiff Webber's pants down exposing her buttocks and injected a shot of medication into Plaintiff Webber's body.

20.    Plaintiff Webber then requested phone privileges to contact her lawyer, which request was granted.

21.    Plaintiff Webber then calmly returned to her room at 8:20 PM alone, although sobbing and crying profusely.

### b) The second shot.

22.    On the morning of September 16, 2014, Plaintiff was being observed 1:1 by staff member Tony Newsome.  At approximately 8:30 AM, Newsome escorted Plaintiff into a meeting with Defendant Syed Hussain in the exam room in the nurse's station.

23.    During the meeting with Defendant Hussain, Plaintiff asked questions about positive and negative symptoms of mental illness, and about the actions of certain medications upon neuroreceptors.  Defendant Hussain, appearing annoyed, gave cursory answers and questioned Plaintiff in a disapproving tone about a book she was reading, *Anatomy of an Epidemic* by Robert Whitaker.

24.    After the meeting with Defendant Hussain, sometime before 9:00 AM, Staff member Marva Stroud dismissed Tony Newsome from the 1:1 observation of the Plaintiff in the day room, and took over that 1:1 detail herself.

25.    At 9:00 AM, staff member Stroud walked with Plaintiff to her room.  A patient named Kim Holmes was nearby, and Stroud began to ridicule the Plaintiff, telling Holmes, "She licks old girl," pointing toward another room of a patient named Loretta, and falsely implying that Plaintiff and Loretta had had a lesbian relationship.  This was insulting to Plaintiff, who is not homosexual.

26.    Despite the insult from staff member Stroud and although she was quite upset, Plaintiff remained non-confrontational in her own behavior and merely settled into her own room, attempting to relax on her bed, though she was frustrated and in tears.

27.    Staff member Stroud refused to allow Plaintiff any personal space or privacy whatsoever, insisting loudly and without reason that Plaintiff had to keep her face and hands uncovered and constantly visible to Stroud, and pulling the bedcovers down to humiliate her.

28.    Plaintiff finally told Stroud that she couldn't take the humiliation any longer, and she would go to the nurse's station and request that a different staff member be placed on the 1:1 observation, which was scheduled to last until 10:00 AM.

29.    When Plaintiff attempted to exit her room for the nurse's station, Stroud tried to physically block her at the door by extending her knee.  Apparently to frighten the Plaintiff or discourage her from going to the nurse's station, Stroud also threatened to call security.

30.    Plaintiff exited the room without countering Stroud's threats, and proceeded to the nurse's station with Stroud close behind, telling her in a tone of mockery, "They won't do anything, you're stuck with me!"

31.    At the open window of the nurse's stations, Plaintiff encountered Defendant Vicki Sandhu, and peacefully, rationally informed Sandhu that she wanted staff member Stroud off the 1:1 observation, because the purpose of the 1:1 was "to protect a patient, not torture her."

32.    Despite Plaintiff's peaceful, non-threatening demeanor, very quickly several more staff members appeared, including Ryma Jacobson, Defendant Syed Hussain and Mario Rabazza.  These individuals surrounded the Plaintiff and physically intimidated or forced her into a nearby conference room, making her sit at the head of the table in the conference room while they all (Defendants Sandhu and Hussain, and staff members Jacobson, Rabazza and

Stroud) yelled or spoke crossly to her about her "inappropriate and unacceptable" behavior, and accused her of being paranoid.

33.    By information and belief, the staff who surrounded and intimidated Plaintiff did so for the purpose of retaliating against her for her study in public (visible to other patients) of a book which they find objectionable, due to its leading and well-known criticisms of psychiatry.

34.    Plaintiff earnestly protested to the five persons arrayed against her in the conference room, and refused to be complacently humiliated, by attempting to point out that no standard of mental health care could ever countenance Stroud's intentional initiation and escalation of hostility and insults against a patient during 1:1 observation.  However, during this confrontation Plaintiff never threatened anyone in the slightest way, never attempted to escape her orchestrated interrogation, and never even rose from the seat she had been forced into at the head of the conference table.

35.    Plaintiff finally pleaded with her multiple tormentors to merely be allowed to return to her room, and promised to be quiet.  She was allowed to walk out of the conference room toward her own room, but she was followed at an uncomfortable, intimidatingly close distance by staff members Stroud and Rabazza and Defendant Hussain.

36.    As they came past the nurse's station, Plaintiff once again feared additional abuse, realizing she would be back in her room alone with staff member Stroud until 10:00.  She offered a final plea that Stroud should not remain on the 1:1 observation.  Defendant Hussain refused that desperate plea.  It was approximately 9:30 AM.

37.    Back in her own room, staff member Stroud once again insisted upon intimately controlling Plaintiff's bed covers, this time before Plaintiff even tried to cover herself.  To

escape such humiliation, Plaintiff returned to the day room, again taking her book to read.

38.   When Plaintiff arrived in the day room just after 9:30 AM with staff member Stroud intrusively close behind, staff members Debbie Martin and Tony Newsome, and about four or five patients were present.

39.   Staff member Stroud left briefly, apparently in contravention of the requirement that she be closely observing the Plaintiff 1:1, telling staff member Debbie Martin, "Watch her!" as the Plaintiff was sitting quietly in a chair with her book.  Stroud returned after about three minutes, with Defendant Hussain.

40.   Staff member Ryma Jacobson reappeared at approximately 9:40 AM.

41.   Defendant Hussain asked the Plaintiff if she wanted medication "to calm down".

42.   Plaintiff replied no, she did not do well with drugs and did not need any.

43.   Defendant Hussain told Plaintiff, "You are not calm enough because you are still talking," and therefore they would have to give her a shot.

44.   Plaintiff begged to not be given the shot, promised to be completely quiet in her room all day, and requested seclusion as a preferred alternative to the drugs.

45.   Two security guards then grabbed Plaintiff by her arms at Defendant Hussain's bidding, and attempted to pull her out of her chair. Plaintiff quietly pleaded to be spared the forced shot of psychotropic drugs, and went limp.  She was dropped to her knees on the floor in front of the chair where she'd been sitting.

46.   Defendant Hussain then ordered staff member Jacobson, "Go get the nurse with the shot."  Jacobson left and quickly returned with Defendants Vicki Sandhu and Criselda Rana, who carried syringes and paper towels.

47.   Defendant Rana forcibly injected drugs into Plaintiff's left arm, and Defendant

Sandhu forcibly injected more drugs into Plaintiff's right arm. After these shots, all staff immediately left the room, abandoning the Plaintiff as she collapsed on the floor of the day room without asking or waiting to see whether she would be alright. Plaintiff cried uncontrollably as her left arm began shaking and she was sick, running to the bathroom and dry heaving, alone.

48.   Before finally falling asleep, Plaintiff was horrified by twitching and tingling on the left side of her face, blurred vision, extreme and sudden anxiety and headache, which she naturally presumed to be the results of the unknown multiple drugs that had just been forced into her body.

49.   As late as the following day, Plaintiff continued to experience after effects from the shots, including an extreme, acute terror of death that has continued to traumatize her to the present time.

50.    In concert or conspiracy, the six individual Defendants and several additional staff members maliciously and baselessly caused Plaintiff to be forcibly drugged twice, attempting to justify their actions with the serious and false accusation that the Plaintiff represented a threat to herself or others.

### c. Defendants' ordered and forced use of drugs
### for punishment in violation of the U.S. Constitution.

51. Since she was first admitted to Elgin Mental Health Center in June, 2012, Plaintiff has been told by various clinicians and staff, including Defendant Hussain, that she must take psychotropic drugs or she will be held in involuntary inpatient psychiatric custody indefinitely

52. On one occasion in late summer, 2014, Defendant Hussain told Plaintiff directly, "If you ever want to leave here, you'll take meds."

53. Plaintiff was also informed directly that she was treated with more strictness and

regarded with more hostility by staff from the moment they knew that she had stopped taking psychotropic drugs.

54. Plaintiff gradually weaned herself off psychotropic drugs between May and October, 2013, receiving no help with this difficult process from any clinicians.

55. Since she stopped taking psychotropic drugs, Plaintiff's mental and physical health has improved dramatically.

56. Defendant Hussain and other Elgin Mental Health Center staff have utterly refused to acknowledge that psychotropic drugs had previously caused Plaintiff various debilitating side effects and harm, and that she is in much better health now that she does not take them. Instead, Plaintiff has been told by Elgin Mental Health Center staff not to talk about this reality because, "It's dangerous."

57. Virtually every slightest social conflict or tension, every argument or cross word, every demonstration of normal human impatience or even the mildest, brief upset in which Plaintiff is ever involved, gets reflexively and unreasonably attributed by staff to the fact that she does not take psychotropic drugs.

58. Defendants have no possible reference to any existing scientific proof of how psychotropic drugs would work to improve Plaintiff's mental health, and there is no existing medical evidence that anything is wrong with Plaintiff's brain or neurochemical functioning that psychotropic drugs could correct or remedy. The drugs are ordered and forcibly delivered as a form of behavior control, and they are a cruel punishment administered as retaliation for Plaintiff's views and opinions, against her objections, despite her pleas for mercy, and in violation of constitutional protections to which she is entitled.

59. Despite the reality of the situation, and against Plaintiff's objections, and in violation

of constitutional protections to which she is entitled, Defendants have insisted officially at least every month, and unofficially much more often, that Plaintiff must take psychotropic medications.

60. On information and belief, Defendants all regard it to be their proper job to convince Plaintiff that she must take psychiatric drugs, or if necessary, to forcibly drug her under false justifications so as to coerce her into "voluntarily" taking psychiatric drugs, and to prevent or discourage her from telling other patients, staff or the public that in reality she is much better off not taking psychiatric drugs.

61. Plaintiff reasonably infers from the above facts that there is an immediate and continuing danger of direct injury and prospective harm from EMHC staff who are following orders and policies to coerce her to take psychotropic drugs. In short, she reasonably fears that Defendants Hussain, Langunilla, Epperson, Cabazuda, Sandhu and Rana will administer more forced drugs and forced injections, because they are and will continue to be ordered to do so by Defendant Pharis and by EMHC policy.


## II.     JURISDICTION, VENUE AND NOTICE


62. This action arises under the Constitution and laws of the United States, including Article III, Section 1of the United States Constitution and is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C.§ 1988. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

63. This case is instituted in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391 as the judicial district in which all

relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

### III.    PARTIES

64. At all times relevant hereto, Plaintiff Marci Webber was a resident of the State of Illinois and a citizen of the United States of America.

65.    At all times relevant hereto, Defendant William Epperson was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in his capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility.  Defendant William Epperson is sued individually.

66.    At all times relevant hereto, Defendant Gloria Langunilla was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Gloria Langunilla is sued individually.

67.    At all times relevant hereto, Defendant Gus Cabazuda was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in his capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Cabazuda is sued individually.

68.    At all times relevant hereto, Defendant Syed Hussain was a citizen of the United States and a resident of the State of Illinois and was acting under color of state

law in his capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Syed Hussain is sued individually.

69.   At all times relevant hereto, Defendant Chriselda Rana was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Chriselda Rana is sued individually.

70.   At all times relevant hereto, Defendant Vicky Sandhu was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Vicky Sandhu is sued individually.

### IV.   STATEMENT OF ADDITIONAL FACTS REGARDING THE MAY 3, 2014, AND SEPTEMBER 16, 2014, FORCED DRUGGING INCIDENTS

71.   Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were fully set forth at length.

72.   At the time that the Plaintiff was asked to see the nurse on May 3, 2014, she was in her room, sitting and calmly speaking to her roommate.

73.   At the time that the Plaintiff was asked to see the nurse, she was not creating a threat to herself, other patients or staff.

74.   Staff member Zella Napier made the initial contact with Plaintiff during this request to visit the nurse.

75.   Napier instructed Plaintiff to see the nurse and the Plaintiff objected to any

necessity to her going to see the nurse for any medical reason.

76.  Napier observed the Plaintiff in her room and the Plaintiff did not threaten Napier, other patients or staff, and the Plaintiff did not have any weapons.

77.  Napier next told the Plaintiff to walk to see the nurse and, although the Plaintiff verbally stated that she did not want to see the nurse, the Plaintiff volunteered to see the nurse in full compliance with the Napier's order and without threat of harm to herself, Napier or any other person.

78.  Napier escorted the Plaintiff from her room to the medical treatment room, a distance of over 100 feet, without resistance, threat of harm, argument or any other action by the Plaintiff that would have required her to be restrained for any reason whatsoever.

79.  Defendant William Epperson, a security guard, and Defendant Gus Cabazuda, a security guard, confronted the Plaintiff in the men's day room and accompanied her to the medical treatment room; and at the time that these Defendant security guards confronted her, the Plaintiff presented herself in a cooperative, calm and compliant fashion, and she represented no risk or threat of harm to herself, the staff or other patients of the facility.

80.  During this time, Defendant Gloria Langunilla, a nurse, was positioned in the medical treatment room, and Defendant Gloria Langunilla had prepared a syringe to forcibly deliver a shot of Lorazepam, a narcotic sedative, a powerful drug that causes sedation and other side effects, to be delivered forcibly to the Plaintiff's body.

81.  Defendants William Epperson and Gus Cabazuda used excessive force handling the body of the Plaintiff in order to bend her over at the waist, pull her pants down and permit the forcible drugging of the Plaintiff by Defendant Gloria Langunilla while staff member

Zella Napier stood by and watched.

82. The Plaintiff objected to the administration of the unnecessary drugs, and to the excessive use of force against her body, and to forced drugging without following such due process of law as is promulgated by the State of Illinois.

83. Plaintiff's statements were constitutionally protected speech under the First Amendment to the United States Constitution and her right to due process under the Fourteenth Amendment to the United States Constitution.

84. The Plaintiff did not struggle or resist Defendants' unwanted and forcible pinning of her body either before or during the incident on May 3, 2014, but acted deferentially and submitted to the Defendants, further showing that she was not a threat.

85. The individual Defendants were irate at the Plaintiff's questioning of their legal authority and medical status by a patient.

86. While Defendants held the Plaintiff down during the May 3, 2014 forced drugging, Defendant William Epperson said "you don't want us to put you in restraints," so as to threaten the Plaintiff with additional force, intimidate her and humiliate her should she not continue to submit to being held down, stripped and drugged.

87. All of the actions of the Defendants on May 3, 2014, and September 16, 2014, were done without any justification or provocation.

88. At the time of the September 16, 2014, forced drugging, Plaintiff was under close observation 1:1, not for protection against any harm she was threatening to herself or anyone else, but for protection against harm others were threatening against her.

89. Plaintiff was not suicidal and had given no indication that she might hurt herself or anyone else at the time of the September 16, 2014 forced drugging.

90.   Defendant Hussain's expressed annoyance at Plaintiff's questions and the book she was reading, immediately prior to ordering the forced drugging on September 16, 2014, demonstrated his unreasoned animus over Plaintiff's disagreements with his continuing insistence that she would benefit from taking psychiatric drugs and his flat refusal to acknowledge the bad side effects she had suffered when taking them.

91.   The insistence by staff member Marva Stroud upon close and intimate physical control over the manner in which Plaintiff was lying in her bed and how she held her bed covers on September 16, 2014, was not justified by any reasonable fear about the Plaintiff's behavior, but was intended to torment, humiliate and antagonize the Plaintiff.

92.   As a result of the actions of the Defendants, Plaintiff was drugged on Defendant Hussain's order and suffered humiliation and exacerbation of her inability to make progress toward recovery and she experienced, and continues to experience, traumatic effects in her body from drugs and a hostile, unstable living environment.

93.   To provide cover and divert from liability for the initiation and continuation of the unprovoked attacks, staff members Marva Stroud and Velma Westbrook falsely and outrageously fabricated information in the Plaintiff's treatment chart.

94.   Stroud fabricated and planted evidence in the Plaintiff's chart, knowing it to be false and that it would be used to justify the retaliation against the Plaintiff for questioning the arbitrary removal of Plaintiff's snack privilege earlier that day.

95.   Defendants William Epperson, Gus Cabazuda and Gloria Langunilla battered the Plaintiff on May 3, 2014, subjecting her to excessive and unreasonable force.

96.   Plaintiff was battered and forced to endure humiliating exposure by removal of her clothing and injection of harmful, dangerous and medically unnecessary drugs on

May 3, 2014.

97.   Defendants Syed Hussain, Criselda Rana and Vicky Sandhu battered the Plaintiff on September 16, 2014, subjecting her to excessive and unreasonable force.

98.   Plaintiff was battered and forced to endure humiliating and frightening, abrupt abandonment when she collapsed on the floor following the forced injection of harmful, dangerous and medically unnecessary drugs on September 16, 2014.

99.   All of the individual Defendants engaged in the unprovoked attacks on the Plaintiff.  None of the Defendants took any steps to protect the Plaintiff against the other Defendants' use of excessive force, despite being in a position and having a duty to do so.

100. Amplifying the excessive nature of the scene is the fact that Defendant guards clandestinely positioned themselves after staff member Napier used trickery to make the Plaintiff vulnerable to this one-sided attack on May 3, 2014.

101.  Immediately following the attack of May 3, 2014, the Plaintiff requested an attorney call.

102. Defendant William Epperson attempted to dissuade the Plaintiff from reporting the attack to legal counsel, stating, "Your attorney won't be available now."

103.   Plaintiff proceeded to insist on her right to contact her attorney, and only after much insistence was Plaintiff given the right to call her attorney and leave him a message.

104. In their angst to divert liability and cover up their brutal attacks on a defenseless patient and/or, on information and belief, with knowledge that Plaintiff had already complained against them to her counsel, Defendants and staff member guards and nurses next conspired and/or acted in concert to have Plaintiff falsely accused of

threatening the staff, other patients and acting in a harmful way to herself by fabrication of information in the Plaintiff's medical chart.

105.  At the times of these incidents, Plaintiff was an unarmed female about 165 pounds, 5' 1" tall, 47 years old, no match for two grown male guards.

106.  Staff member Marva Stroud falsely reported in her far-fetched chart statement about the May 3, 2014 incident: "(Plaintiff was) continuing to walk closer to Velma I then step (sic) in front of her and again tried to redirect her but she still wouldn't stop she then tried to get around me to get at Velma. The nurse tried to intervene but she still wouldn't stop so security was called. ~~No other ine~~ (*sic*) then security intervene."

107.  Staff member Velma Westbrook amplified Stroud's false story. She falsely reported that even the threat of violence and intimidation tactics of the arbitrary privilege restriction had no effect, requiring the battery and forced drugging: "(Plaintiff was) loud and disrupted (*sic*), causing the mileu (*sic*) to be unstable making other residents agitated."

108.  All of the above-described acts were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Plaintiff's federally protected rights, and were done pursuant under color of state law.

109. On information and belief, the Plaintiff reasonably expects to continue to be hurt by the same Defendants named in this Complaint, who have been the subject of complaints both prior to and since May 2014, and these injuries are ongoing to the present time.

110. As a direct and proximate result of the wrongful conduct of each of the Defendants, Plaintiff has been substantially injured. These injuries include, but are

not limited to, loss of constitutional and federal rights, physical injuries, physical and mental impairments and disfigurement, great pain and emotional distress, and/or aggravation of pre-existing conditions, and ongoing special damages for medically/psychologically related treatment caused by the unconstitutional and brutal concerted conduct of all these Defendants.

111. The Plaintiff is now suffering from these injuries, with an inability to consistently live without fear of retaliation from the very staff charged with the responsibility to enable her treatment or rehabilitation.

112. The Plaintiff also suffers persisting emotional damage the extent of which has not yet been fully ascertained. Plaintiff continues to suffer ongoing emotional distress, with significant stress related symptoms, including fear, sadness, humiliation, anxiety, stress, anger, depression, frustration, occasional sleeplessness, nightmares and flashbacks, from being violently treated like this.

113. Plaintiff is also entitled to punitive damages on all of her claims against the individual Defendants personally, to redress their willful, malicious, wanton, reckless and fraudulent conduct.


### V.     CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF:**
**42 U.S.C. § 1983 - Excessive Force in violation of the**
**Fourteenth Amendment on May 3, 2014 (Against Defendants Epperson,**
**Cabazuda, and Langunilla.)**


114. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth at length herein.

115. Relevant portions of 42 U.S.C. § 1983 provide that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

116. Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

117. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as staff of the State and their acts or omissions were conducted within the scope of their official duties or employment.

118. On May 3, 2014, at the time of the complained of events of the first shot, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by the staff of the State.

119. Any reasonable person knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

120. The actions and use of force by Defendants Epperson, Cabazuda and Langunilla, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The force and failure to protect the Plaintiff's constitutional rights, and the use of unlawful forced drugging by these Defendants violated the Fourteenth Amendment rights of Plaintiff.

121. The force used constituted aggravated battery in that it could have caused and did cause serious bodily injury through use of drugs.

122. None of the Defendants took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force of other Defendants or from the excessive force of later unlawful forced drugging despite being in a position to do so. The Defendants are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other Defendant.

123. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

124. They did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

125. The actions of the Defendants, and each of them, in the context and circumstances where the Plaintiff represented no threat of harm to herself, other patients or staff violates the contemporary standards of decency.

126. The Defendants, and each of them, conducted a malicious and sadistic use of force to cause harm to the Plaintiff by forcing her to submit to administration of drugs, unlawful bodily touching and stripping away her clothing by two male staff members violates contemporary standards of decency, regardless of whether or not significant injury is evident. The Defendants used force in a willful, wanton and unnecessary fashion as no need for application of any force was evident when

compared with any threat reasonably perceived by the responsible staff.

127. The Defendants' excessive force exceeded any reasonable use of force as no force was required whatsoever. The use of force to pull the Plaintiff's pants down while holding her down over an examination table bent at the waste and exposing her to male staff is a use of force so repugnant as to shock the conscience of mankind.

128. The acts or omissions of all individual Defendants were the direct and proximate causes behind Plaintiff's injuries.

129. These individual Defendants acted in concert and joint action with each other.

130. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional rights and caused her other damages.

131. These individual Defendants are not entitled to qualified immunity for the complained of conduct.

132. The Defendants to this claim, at all times relevant hereto, were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

133. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts in excess of the jurisdictional limit.

134. On information and belief, Plaintiff may suffer lost abilities to recover in the environment she resides in and may further suffer physical and emotional pain from ongoing and continued loss of society through the prolonged incarceration and

remediation of false reports used to cover-up Defendants retaliatory use of excessive force and unlawful forced drugging. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

135. In addition to compensatory, economic and consequential damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### SECOND CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 – Excessive Force in violation of the
### Fourteenth Amendment on September 16, 2014 (Against Defendants Hussain, Sandhu, and Rana.)

136. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth at length herein.

137. Relevant portions of 42 U.S.C. § 1983 provide that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

138. Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

139. All individual Defendants to this claim, at all times relevant hereto,

were acting under the color of state law in their capacity as staff of the State and their acts or omissions were conducted within the scope of their official duties or employment.

140.  On September 16, 2014, at the time of the complained of events of the second shot, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by the staff of the State.

141. Any reasonable person knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

142.  The actions and use of force by Defendants Hussain, Sandhu and Rana, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The force and failure to protect the Plaintiff's constitutional rights, and the use of unlawful forced drugging by these Defendants violated the Fourteenth Amendment rights of Plaintiff.

143.  The force used constituted aggravated battery in that it could have caused and did cause serious bodily injury through use of drugs.

144. None of the Defendants took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force of other Defendants or from the excessive force of later unlawful forced drugging despite being in a position to do so. The Defendants are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other Defendant.

145. Defendants engaged in the conduct described by this Complaint willfully,

maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

146. They did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

147. The actions of the Defendants, and each of them, in the context and circumstances where the Plaintiff represented no threat of harm to herself, other patients or staff, violate the contemporary standards of decency.

148. The Defendants, and each of them, conducted a malicious and sadistic use of force to cause harm to the Plaintiff by forcing her to submit to administration of multiple unknown drugs, followed by immediate abandonment.

149. The Defendants' excessive force exceeded any reasonable use of force as no force was required whatsoever. The use of force to simultaneously inject the Plaintiff in both arms while she lay helpless and begging for mercy on the floor is a use of force so repugnant as to shock the conscience of mankind. The Defendants used force in a willful, wanton and unnecessary fashion as no need for application of any force was evident when compared with any threat reasonably perceived by the responsible staff.

150. The acts or omissions of all individual Defendants were the direct and proximate causes behind Plaintiff's injuries.

151. These individual Defendants acted in concert and joint action with each other.

152. The acts or omissions of Defendants as described herein intentionally

deprived Plaintiff of her constitutional rights and caused her other damages.

153. These individual Defendants are not entitled to qualified immunity for the complained of conduct.

154. The Defendants to this claim, at all times relevant hereto, were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

155. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts in excess of the jurisdictional limit.

156. On information and belief, Plaintiff may suffer lost abilities to recover in the environment she resides in and may further suffer physical and emotional pain from ongoing and continued loss of society through the prolonged incarceration and remediation of false reports used to cover-up Defendants retaliatory use of excessive force and unlawful forced drugging. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

157. In addition to compensatory, economic and consequential damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### THIRD CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 -Retaliation in Violation of
### the First Amendment (Against Defendants
### Epperson, Cabazuda, Langunilla, Hussain, Sandhu,
### and Rana.)

158. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth at length herein.

159. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

160. Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

161. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as staff members of the State and their acts or omissions were conducted within the scope of their official duties or employment.

162. On May 3, 2014, and September 16, 2014, at the times of the complained of events, Plaintiff had the clearly established constitutional right to be free from retaliation for the exercise of protected speech.

163. Any reasonable staff member knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

164. Plaintiff exercised her constitutionally protected right to question staff for

arbitrary enforcement of restrictions and counter-therapeutic insults and escalations of hostility between staff and patients; and also exercised her constitutionally protected right to assert, proclaim or promote the statutory rights of patients to refuse psychiatric drugs; and/or also engaged in protected speech related to the constitutional rights of citizens with respect to seizures of their body by the State and objectionable conduct by staff of State.

165. Retaliatory animus for Plaintiff's exercise of her constitutionally protected rights – to question staff and voice her own opinions regarding the scope of the staff's legal authority to restrict patients, engage in obviously counter-therapeutic insults and hostility toward patients, seize the body of a patient, or force the person of the Plaintiff or another patient to be medically treated through battery and forced drugging – was a substantially motivating factor in the excessive force used by individual Defendants.

166. The excessive force used against Plaintiff on May 3, 2014, and again on September 16, 2014, in retaliation for her protected conduct would deter a person of ordinary firmness from continuing to engage in the protected conduct.

167. All of these individual Defendanta and other staff participated in this use of force as a means of retaliation for Plaintiff's exercise of her protected speech. None of the Defendants or other staff took reasonable steps to protect Plaintiff from this retaliation for the exercise of her protected speech. The individual Defendants are each liable for the injuries and damages resulting from the objectively unreasonable conduct that shocks the conscience of mankind.

168. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected

constitutional rights.

169.   The acts or omissions of all individual Defendants were direct and proximate causes behind Plaintiff's injuries and deprivation of her rights.

170. The individual Defendants acted in concert and joint action with each other.

171.   The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

172.   Defendants are not entitled to qualified immunity for the complained of conduct.

173.   The Defendants to this claim at all times relevant hereto were acting pursuant to State/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

174. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory damages, in amounts in excess of the jurisdictional limit.

175. On information and belief, Plaintiff may suffer lost abilities to recover in the environment where she resides in and may further suffer physical and emotional pain from ongoing and continued loss of society through the prolonged incarceration and remediation of false reports used to cover-up Defendants' retaliatory use of excessive force and unlawful forced drugging.  Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

176. In addition to compensatory, economic and consequential, Plaintiff is

entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## VI.    PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

A.  compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial and in excess of the jurisdictional limit;

B.  economic losses on all claims allowed by law;

C.  punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial and in excess of the jurisdictional limit;

D.  attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

E.  pre- and post-judgment interest at the lawful rate;

F.  Court ordered equitable and injunctive relief from enforced drugging, battery or other staff policies or orders that would cause Plaintiff to be forcibly drugged; and,

G.  any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted,


  /s/ S. Randolph Kretchmar
S. Randolph Kretchmar
One of the Attorneys for Plaintiff

Law Offices of Kretchmar and Cecala, PC.
1170 Michigan Avenue
Wilmette, IL 60091
847-370-5410
s_randolph@earthlink.net
jcecala@expansionfunding.com