**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARCI WEBBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 5987 |
| | ) | |
| SYED HUSSAIN, individually, GLORIA | ) | |
| LAGUNILLA, individually, WILLIAM | ) | Judge Manish S. Shah |
| EPPERSON, individually, GUS CABAZUDA, | ) | |
| individually, VICKY SANDHU, individually, | ) | |
| and CRISELDA RANA, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS LAGUNILLA, EPPERSON AND CABEZUDO'S
<u>ANSWER TO SECOND AMENDED COMPLAINT AND JURY DEMAND</u>**

NOW COME the Defendants, GLORIA LAGUNILLA, individually, WILLIAM

EPPERSON, individually, and GUS CABAZUDA, individually (hereafter collectively

"Defendants"), by their attorney, LISA MADIGAN, Attorney General of Illinois, and hereby

answer Plaintiff's Second Amended Complaint as follows:

## I. <u>INTRODUCTION</u>

1.      This is an action brought by Marci Webber, a person confined to the Elgin Mental Health Center ("Facility"), to vindicate profound deprivations of her constitutional rights caused by institutionally based brutality.

**<u>ANSWER</u>:** Defendants admit that Plaintiff, currently confined to Elgin Mental Health purports

to bring an action for the alleged violation of her constitutional rights.  Defendants deny the

remaining allegations.

### a) **The first shot.**

2.     On May 3, 2014, the Plaintiff, Marci Webber, a 47-year-old female was seated in the day room of the Defendant Facility at approximately 7:35 PM.

**ANSWER**:  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

3.     At 7:35 PM Plaintiff Webber was informed by Loretta Vaughn, another patient at the Defendant Facility, that Plaintiff Webber and Loretta Vaughn were to be restricted from "snack time" privileges as ordered by staff member Marva Stroud.  At the time, Plaintiff Webber was known to be defenseless.

**ANSWER**:  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

4.     Shortly after 7:35 PM Plaintiff Webber along with numerous other patients at the Defendant Facility began to enter the dining room for the evening snack.

**ANSWER**:  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

5.     Upon entering the dining room Plaintiff Webber was accosted by staff member Marva Stroud who shouted at Plaintiff Webber to leave the dining room, and stated,"You're not coming in here, you're not coming in here!"

**ANSWER**:  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

6.     Staff member Velma Westbrook quickly approached Plaintiff Webber, stuck her finger in her face and shouted at Plaintiff Webber to leave the dining room.

**ANSWER**:  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

7.     Plaintiff Webber asked, "I need to know why I can't come in."

**ANSWER**:  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

     8.    Again staff member Westbrook put her finger in Plaintiff Webber's face moving her face in extreme close proximity to Plaintiff Webber and shouting, "You're not getting any snack, you're restricted!"

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

     9.    Plaintiff Webber said, "You need to get out of my face." To which Westbrook responded, "Move me, move me!"

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

     10.    Plaintiff Webber said, "You're trying to provoke me so you can make stuff up in my chart."

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

     11.    Staff member Westbrook said, "That's right, I'm going to make stuff up and put it in your chart."

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

     12. Staff member Marva Stroud then stepped in between Westbrook and the Plaintiff such that both Stroud and Westbrook were simultaneously threatening physical violence towards Plaintiff Webber.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

     13.    Plaintiff Webber then walked away from the dining room entranceway and calmly returned to her room.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

3

truth of the allegations contained in this paragraph.

  14.  Upon returning to her room, Plaintiff Webber spoke calmly with her roommate for approximately 15 minutes.

**ANSWER**: Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

  15.  At approximately 7:55 PM security guard Zella Napier, came to Plaintiff Webber's room and indicated, "The nurse wants to see you."

**ANSWER**: Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

  16.  Plaintiff Webber followed Napier down the hallway approximately 100 feet to the men's day room where Plaintiff Webber was confronted by Defendant William Epperson, a security guard, and Defendant Gus Cabazuda.

**ANSWER**: Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

  17.  Plaintiff Webber was escorted by the two Defendant security guards and staff member Napier another 40 feet to the nurse's station and was directed to follow Defendant Gloria Langunilla, a nurse, into an examination area.

**ANSWER**: Admit.

  18.  Plaintiff Webber was immediately grabbed by Defendant William Epperson, a security guard, and Defendant Gus Cabazuda from behind, securing her left and right arms and forcing her torso onto the examination table, bending her body 90˚ at the waist while simultaneously grabbing her thigh to force her to hold still.

**ANSWER**: Defendants admit that Defendant Epperson and Defendant Cabezudo used a crisis

protection intervention hold on Plaintiff but deny the remaining allegations contained in this

paragraph and deny any wrongdoing.

  19.  Defendant Gloria Langunilla then pulled Plaintiff Webber's pants down exposing her buttocks and injected a shot of medication into Plaintiff Webber's body.

4

**ANSWER:**  Defendants admit Defendant Langunilla administered medication to Plaintiff but

deny the remaining allegations contained in this paragraph and deny any wrongdoing.

20.     Plaintiff Webber then requested phone privileges to contact her lawyer, which
request was granted.

**ANSWER:**     Admit.

21.     Plaintiff Webber then calmly returned to her room at 8:20 PM alone, although
sobbing and crying profusely.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

### b) The second shot.

22.     On the morning of September 16, 2014, Plaintiff was being observed 1:1 by staff
member Tony Newsome. At approximately 8:30 AM, Newsome escorted Plaintiff into a meeting
with Defendant Syed Hussain in the exam room in the nurse's station.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

23.     During the meeting with Defendant Hussain, Plaintiff asked questions about
positive and negative symptoms of mental illness, and about the actions of certain medications
upon neuroreceptors. Defendant Hussain, appearing annoyed, gave cursory answers and
questioned Plaintiff in a disapproving tone about a book she was reading, Anatomy of an
Epidemic by Robert Whitaker.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

24.     After the meeting with Defendant Hussain, sometime before 9:00 AM, Staff
member Marva Stroud dismissed Tony Newsome from the 1:1 observation of the Plaintiff in the
day room, and took over that 1:1 detail herself.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

25.     At 9:00 AM, staff member Stroud walked with Plaintiff to her room. A patient named Kim Holmes was nearby, and Stroud began to ridicule the Plaintiff, telling Holmes, "She licks old girl," pointing toward another room of a patient named Loretta, and falsely implying that Plaintiff and Loretta had had a lesbian relationship. This was insulting to Plaintiff, who is not homosexual.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

26.     Despite the insult from staff member Stroud and although she was quite upset, Plaintiff remained non-confrontational in her own behavior and merely settled into her own room, attempting to relax on her bed, though she was frustrated and in tears.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

27.     Staff member Stroud refused to allow Plaintiff any personal space or privacy whatsoever, insisting loudly and without reason that Plaintiff had to keep her face and hands uncovered and constantly visible to Stroud, and pulling the bedcovers down to humiliate her.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

28.     Plaintiff finally told Stroud that she couldn't take the humiliation any longer, and she would go to the nurse's station and request that a different staff member be placed on the 1:1 observation, which was scheduled to last until 10:00 AM.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

29.     When Plaintiff attempted to exit her room for the nurse's station, Stroud tried to physically block her at the door by extending her knee. Apparently to frighten the Plaintiff or discourage her from going to the nurse's station, Stroud also threatened to call security.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

6

30.    Plaintiff exited the room without countering Stroud's threats, and proceeded to the nurse's station with Stroud close behind, telling her in a tone of mockery, "They won't do anything, you're stuck with me!"

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

31.    At the open window of the nurse's stations, Plaintiff encountered Defendant Vicki Sandhu, and peacefully, rationally informed Sandhu that she wanted staff member Stroud off the 1:1 observation, because the purpose of the 1:1 was "to protect a patient, not torture her."

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

32.    Despite Plaintiff's peaceful, non-threatening demeanor, very quickly several more staff members appeared, including Ryma Jacobson, Defendant Syed Hussain and Mario Rabazza. These individuals surrounded the Plaintiff and physically intimidated or forced her into a nearby conference room, making her sit at the head of the table in the conference room while they all (Defendants Sandhu and Hussain,and staff members Jacobson, Rabazza and Stroud) yelled or spoke crossly to her about her "inappropriate and unacceptable" behavior, and accused her of being paranoid.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

33.    By information and belief, the staff who surrounded and intimidated Plaintiff did so for the purpose of retaliating against her for her study in public (visible to other patients) of a book which they find objectionable, due to its leading and well-known criticisms of psychiatry.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations

contained in this paragraph.

34.    Plaintiff earnestly protested to the five persons arrayed against her in the conference room, and refused to be complacently humiliated, by attempting to point out that no standard of mental health care could ever countenance Stroud's intentional initiation and escalation of hostility and insults against a patient during 1:1 observation. However, during this confrontation Plaintiff never threatened anyone in the slightest way, never attempted to escape her orchestrated interrogation, and never even rose from the seat she had been forced into at the head of the conference table.

7

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

35. Plaintiff finally pleaded with her multiple tormentors to merely be allowed to return to her room, and promised to be quiet. She was allowed to walk out of the conference room toward her own room, but she was followed at an uncomfortable, intimidatingly close distance by staff members Stroud and Rabazza and Defendant Hussain.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

36. As they came past the nurse's station, Plaintiff once again feared additional abuse, realizing she would be back in her room alone with staff member Stroud until 10:00. She offered a final plea that Stroud should not remain on the 1:1 observation. Defendant Hussain refused that desperate plea. It was approximately 9:30 AM.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

37. Back in her own room, staff member Stroud once again insisted upon intimately controlling Plaintiff's bed covers, this time before Plaintiff even tried to cover herself. To escape such humiliation, Plaintiff returned to the day room, again taking her book to read.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

38. When Plaintiff arrived in the day room just after 9:30 AM with staff member Stroud intrusively close behind, staff members Debbie Martin and Tony Newsome, and about four or five patients were present.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

39. Staff member Stroud left briefly, apparently in contravention of the requirement that she be closely observing the Plaintiff 1:1, telling staff member Debbie Martin, "Watch her!" as the Plaintiff was sitting quietly in a chair with her book. Stroud returned after about three minutes, with Defendant Hussain.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

40.     Staff member Ryma Jacobson reappeared at approximately 9:40 AM.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

41.     Defendant Hussain asked the Plaintiff if she wanted medication "to calm down".

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

42.     Plaintiff replied no, she did not do well with drugs and did not need any.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

43.     Defendant Hussain told Plaintiff, "You are not calm enough because you are still talking," and therefore they would have to give her a shot.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

44.     Plaintiff begged to not be given the shot, promised to be completely quiet in her room all day, and requested seclusion as a preferred alternative to the drugs.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

45.     Two security guards then grabbed Plaintiff by her arms at Defendant Hussain's bidding, and attempted to pull her out of her chair. Plaintiff quietly pleaded to be spared the forced shot of psychotropic drugs, and went limp. She was dropped to her knees on the floor in front of the chair where she'd been sitting.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

46.     Defendant Hussain then ordered staff member Jacobson, "Go get the nurse with the shot." Jacobson left and quickly returned with Defendants Vicki Sandhu and Criselda Rana, who carried syringes and paper towels.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

47.     Defendant Rana forcibly injected drugs into Plaintiff's left arm, and Defendant Sandhu forcibly injected more drugs into Plaintiff 's right arm. After these shots, all staff immediately left the room, abandoning the Plaintiff as she collapsed on the floor of the day room without asking or waiting to see whether she would be alright. Plaintiff cried uncontrollably as her left arm began shaking and she was sick, running to the bathroom and dry heaving, alone.

**ANSWER:**  Defendants lack sufficient knowledge or information to admit or deny the allegations

contained in this paragraph.

48.     Before finally falling asleep, Plaintiff was horrified by twitching and tingling on the left side of her face, blurred vision, extreme and sudden anxiety and headache, which she naturally presumed to be the results of the unknown multiple drugs that had just been forced into her body.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

49.     As late as the following day, Plaintiff continued to experience after effects from the shots, including an extreme, acute terror of death that has continued to traumatize her to the present time.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

50.     In concert or conspiracy, the six individual Defendants and several additional staff members maliciously and baselessly caused Plaintiff to be forcibly drugged twice, attempting to justify their actions with the serious and false accusation that the Plaintiff represented a threat to herself or others.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

### c. Defendants' ordered and forced use of drugs
### for punishment in violation of the U.S. Constitution.

51.     Since she was first admitted to Elgin Mental Health Center in June, 2012, Plaintiff has been told by various clinicians and staff, including Defendant Hussain, that she must take psychotropic drugs or she will be held in involuntary inpatient psychiatric custody indefinitely.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

52.     On one occasion in late summer, 2014, Defendant Hussain told Plaintiff directly, "If you ever want to leave here, you'll take meds."

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

53.     Plaintiff was also informed directly that she was treated with more strictness and regarded with more hostility by staff from the moment they knew that she had stopped taking psychotropic drugs.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

54.     Plaintiff gradually weaned herself off psychotropic drugs between May and October, 2013, receiving no help with this difficult process from any clinicians.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

55.     Since she stopped taking psychotropic drugs, Plaintiff's mental and physical health has improved dramatically.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

56.     Defendant Hussain and other Elgin Mental Health Center staff have utterly refused

to acknowledge that psychotropic drugs had previously caused Plaintiff various debilitating side effects and harm, and that she is in much better health now that she does not take them. Instead, Plaintiff has been told by Elgin Mental Health Center staff not to talk about this reality because, "It's dangerous."

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

57.     Virtually every slightest social conflict or tension, every argument or cross word, every demonstration of normal human impatience or even the mildest, brief upset in which Plaintiff is ever involved, gets reflexively and unreasonably attributed by staff to the fact that she does not take psychotropic drugs.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

58.     Defendants have no possible reference to any existing scientific proof of how psychotropic drugs would work to improve Plaintiff's mental health, and there is no existing medical evidence that anything is wrong with Plaintiff's brain or neurochemical functioning that psychotropic drugs could correct or remedy. The drugs are ordered and forcibly delivered as a form of behavior control, and they are a cruel punishment administered as retaliation for Plaintiff's views and opinions, against her objections, despite her pleas for mercy, and in violation of constitutional protections to which she is entitled.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

59.     Despite the reality of the situation, and against Plaintiff's objections, and in violation of constitutional protections to which she is entitled , Defendants have insisted officially at least every month, and unofficially much more often, that Plaintiff must take psychotropic medications.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

60.     On information and belief, Defendants all regard it to be their proper job to convince Plaintiff that she must take psychiatric drugs, or if necessary, to forcibly drug her under false justifications so as to coerce her into "voluntarily" taking psychiatric drugs, and to prevent or discourage her from telling other patients, staff or the public that in reality she is much better off

12

not taking psychiatric drugs.

**ANSWER:**  Deny.

61.    Plaintiff reasonably infers from the above facts that there is an immediate and continuing danger of direct injury and prospective harm from EMHC staff who are following orders and policies to coerce her to take psychotropic drugs. In short, she reasonably fears that Defendants Hussain, Langunilla, Epperson, Cabazuda, Sandhu and Rana will administer more forced drugs and forced injections, because they are and will continue to be ordered to do so by Defendant Pharis and by EMHC policy.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

## II.  JURISDICTION, VENUE AND NOTICE

62.    This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C.§ 1988. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

**ANSWER:**  Admit jurisdiction is proper.

63.    This case is instituted in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

**ANSWER:**  Admit venue is proper.

## III. PARTIES

64.    At all times relevant hereto, Plaintiff Marci Webber was a resident of the State of Illinois and a citizen of the United States of America.

**ANSWER:**  Admit.

65.    At all times relevant hereto, Defendant William Epperson was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in his capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant William Epperson is sued individually.

13

**ANSWER**: Admit.

66. At all times relevant hereto, Defendant Gloria Lagunilla was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Gloria Lagunilla is sued individually.

**ANSWER**: Admit.

67. At all times relevant hereto, Defendant Gus Cabezudo was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in his capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Cabazuda is sued individually.

**ANSWER**: Admit.

68. At all times relevant hereto, Defendant Syed Hussain was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in his capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Syed Hussain is sued individually.

**ANSWER**: Admit.

69. At all times relevant hereto, Defendant Criselda Rana was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Criselda Rana is sued individually.

**ANSWER**: Admit.

70. At all times relevant hereto, Defendant Vicky Sandhu was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant Vicky Sandhu is sued individually.

**ANSWER**: Admit.

## IV. STATEMENT OF ADDITIONAL FACTS REGARDING THE MAY 3, 2014, AND SEPTEMBER 16, 2014, FORCED DRUGGING INCIDENTS

71. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were fully set forth at length.

14

**ANSWER:** Defendants incorporate their answers to the preceding paragraphs as if fully set forth

herein.

72.     At the time that the Plaintiff was asked to see the nurse on May 3, 2014, she was in her room, sitting and calmly speaking to her roommate.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

73. At the time that the Plaintiff was asked to see the nurse, she was not creating a threat to herself, other patients or staff.

**ANSWER:** Deny.

74.     Staff member Zella Napier made the initial contact with Plaintiff during this request to visit the nurse.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

75.     Napier instructed Plaintiff to see the nurse and the Plaintiff objected to any necessity to her going to see the nurse for any medical reason.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

76.     Napier observed the Plaintiff in her room and the Plaintiff did not threaten Napier, other patients or staff, and the Plaintiff did not have any weapons.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

77.     Napier next told the Plaintiff to walk to see the nurse and, although the Plaintiff verbally stated that she did not want to see the nurse, the Plaintiff volunteered to see the nurse in full compliance with the Napier's order and without threat of harm to herself, Napier or any other person.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

78. Napier escorted the Plaintiff from her room to the medical treatment room, a distance of over 100 feet, without resistance, threat of harm, argument or any other action by the Plaintiff that would have required her to be restrained for any reason whatsoever.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

79. Defendant William Epperson, a security guard, and Defendant Gus Cabazuda, a security guard, confronted the Plaintiff in the men's day room and accompanied her to the medical treatment room; and at the time that these Defendant security guards confronted her, the Plaintiff presented herself in a cooperative, calm and compliant fashion, and she represented no risk or threat of harm to herself, the staff or other patients of the facility.

**ANSWER:** Deny.

80. During this time, Defendant Gloria Langunilla, a nurse, was positioned in the medical treatment room, and Defendant Gloria Langunilla had prepared a syringe to forcibly deliver a shot of Lorazepam, a narcotic sedative, a powerful drug that causes sedation and other side effects, to be delivered forcibly to the Plaintiff's body.

**ANSWER:** Defendants admit Defendant Lagunilla prepared a syringe of Lorazepam to be

administered to Plaintiff and admit the drug is a narcotic sedative that causes sedation.

Defendants deny the remaining allegations contained in this paragraph.

81. Defendants William Epperson and Gus Cabazuda used excessive force handling the body of the Plaintiff in order to bend her over at the waist, pull her pants down and permit the forcible drugging of the Plaintiff by Defendant Gloria Langunilla while staff member Zella Napier stood by and watched.

**ANSWER:** Deny.

82. The Plaintiff objected to the administration of the unnecessary drugs, and to the excessive use of force against her body, and to forced drugging without following such due process of law as is promulgated by the State of Illinois.

**ANSWER:** Defendants admit Plaintiff objected to the administration of drugs. Defendants deny

16

the remaining allegations contained in this paragraph.

83.    Plaintiff's statements were constitutionally protected speech under the First Amendment to the United States Constitution and her right to due process under the Fourteenth Amendment to the United States Constitution.

**ANSWER:**  Deny.

84.    The Plaintiff did not struggle or resist Defendants' unwanted and forcible pinning of her body either before or during the incident on May 3, 2014, but acted deferentially and submitted to the Defendants, further showing that she was not a threat.

**ANSWER:**  Deny.

85.    The individual Defendants were irate at the Plaintiff's questioning of their legal authority and medical status by a patient.

**ANSWER:**  Deny.

86.    While Defendants held the Plaintiff down during the May 3, 2014 forced drugging, Defendant William Epperson said "you don't want us to put you in restraints," so as to threaten the Plaintiff with additional force, intimidate her and humiliate her should she not continue to submit to being held down, stripped and drugged.

**ANSWER:**  Deny.

87.    All of the actions of the Defendants on May 3, 2014, and September 16, 2014, were done without any justification or provocation.

**ANSWER:**  Deny.

88.    At the time of the September 16, 2014, forced drugging, Plaintiff was under close observation 1:1, not for protection against any harm she was threatening to herself or anyone else, but for protection against harm others were threatening against her.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

89.    Plaintiff was not suicidal and had given no indication that she might hurt herself or anyone else at the time of the September 16, 2014 forced drugging.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

17

truth of the allegations contained in this paragraph.

90.     Defendant Hussain's expressed annoyance at Plaintiff's questions and the book she was reading, immediately prior to ordering the forced drugging on September 16, 2014, demonstrated his unreasoned animus over Plaintiff's disagreements with his continuing insistence that she would benefit from taking psychiatric drugs and his flat refusal to acknowledge the bad side effects she had suffered when taking them.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

91.     The insistence by staff member Marva Stroud upon close and intimate physical control over the manner in which Plaintiff was lying in her bed and how she held her bed covers on September 16, 2014, was not justified by any reasonable fear about the Plaintiff's behavior, but was intended to torment, humiliate and antagonize the Plaintiff.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

92.     As a result of the actions of the Defendants, Plaintiff was drugged on Defendant Hussain's order and suffered humiliation and exacerbation of her inability to make progress toward recovery and she experienced, and continues to experience, traumatic effects in her body from drugs and a hostile, unstable living environment.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

93.     To provide cover and divert from liability for the initiation and continuation of the unprovoked attacks, staff members Marva Stroud and Velma Westbrook falsely and outrageously fabricated information in the Plaintiff's treatment chart.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

94.     Stroud fabricated and planted evidence in the Plaintiff's chart, knowing it to be false and that it would be used to justify the retaliation against the Plaintiff for questioning the arbitrary removal of Plaintiff's snack privilege earlier that day.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

95.     Defendants William Epperson, Gus Cabazuda and Gloria Langunilla battered the Plaintiff on May 3, 2014, subjecting her to excessive and unreasonable force.

**ANSWER:**  Deny.

96.     Plaintiff was battered and forced to endure humiliating exposure by removal of her clothing and injection of harmful, dangerous and medically unnecessary drugs on May 3, 2014.

**ANSWER:**  Deny.

97.     Defendants Syed Hussain, Criselda Rana and Vicky Sandhu battered the Plaintiff on September 16, 2014, subjecting her to excessive and unreasonable force.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

98.     Plaintiff was battered and forced to endure humiliating and frightening, abrupt abandonment when she collapsed on the floor following the forced injection of harmful, dangerous and medically unnecessary drugs on September 16, 2014.

**ANSWER:**  Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

99.     All of the individual Defendants engaged in the unprovoked attacks on the Plaintiff.  None of the Defendants took any steps to protect the Plaintiff against the other Defendants' use of excessive force, despite being in a position and having a duty to do so.

**ANSWER:**  Deny.

100.     Amplifying the excessive nature of the scene is the fact that Defendant guards clandestinely positioned themselves after staff member Napier used trickery to make the Plaintiff vulnerable to this one-sided attack on May 3, 2014.

**ANSWER:**  Deny.

101.     Immediately following the attack of May 3, 2014, the Plaintiff requested an attorney call.

**ANSWER:**   Defendants admit Plaintiff requested to call an attorney.  Defendants deny the

remaining allegations contained in this paragraph and deny any wrongdoing.

102. Defendant William Epperson attempted to dissuade the Plaintiff from reporting the attack to legal counsel, stating, "Your attorney won't be available now."

**ANSWER:** Deny.

103. Plaintiff proceeded to insist on her right to contact her attorney, and only after much insistence was Plaintiff given the right to call her attorney and leave him a message.

**ANSWER:** Deny.

104. In their angst to divert liability and cover up their brutal attacks on a defenseless patient and/or, on information and belief, with knowledge that Plaintiff had already complained against them to her counsel, Defendants and staff member guards and nurses next conspired and/or acted in concert to have Plaintiff falsely accused of threatening the staff, other patients and acting in a harmful way to herself by fabrication of information in the Plaintiff's medical chart.

**ANSWER:** Deny.

105. At the times of these incidents, Plaintiff was an unarmed female about 165 pounds, 5'1" tall, 47 years old, no match for two grown male guards.

**ANSWER:** Defendants admit Plaintiff is a 47-year old, 5'1", 165 pound female. Defendants

deny the remaining allegations contained in this paragraph.

106. Staff member Marva Stroud falsely reported in her far-fetched chart statement about the May 3, 2014 incident:"(Plaintiff was) continuing to walk closer to Velma I then step (sic) in front of her and again tried to redirect her but she still wouldn't stop she then tried to get around me to get at Velma. The nurse tried to intervene but she still wouldn't stop so security was called. No other inc (sic) then security intervene."

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

107. Staff member Velma Westbrook amplified Stroud's false story. She falsely reported that even the threat of violence and intimidation tactics of the arbitrary privilege restriction had no effect, requiring the battery and forced drugging: "(Plaintiff was) loud and disrupted (sic), causing the mileu (sic) to be unstable making other residents agitated."

20

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

108.    All of the above-described acts were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Plaintiff's federally protected rights, and were done pursuant under color of state law.

**ANSWER:** Deny.

109.    On information and belief, the Plaintiff reasonably expects to continue to be hurt by the same Defendants named in this Complaint, who have been the subject of complaints both prior to and since May 2014, and these injuries are ongoing to the present time.

**ANSWER:** Deny.

110.    As a direct and proximate result of the wrongful conduct of each of the Defendants, Plaintiff has been substantially injured. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, physical and mental impairments and disfigurement, great pain and emotional distress, and/or aggravation of pre-existing conditions, and ongoing special damages for medically/psychologically related treatment caused by the unconstitutional and brutal concerted conduct of all these Defendants.

**ANSWER:** Deny.

111.    The Plaintiff is now suffering from these injuries, with an inability to consistently live without fear of retaliation from the very staff charged with the responsibility to enable her treatment or rehabilitation.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

112.    The Plaintiff also suffers persisting emotional damage the extent of which has not yet been fully ascertained. Plaintiff continues to suffer ongoing emotional distress, with significant stress related symptoms, including fear, sadness, humiliation, anxiety, stress, anger, depression, frustration, occasional sleeplessness, nightmares and flashbacks, from being violently treated like this.

**ANSWER:** Defendants have insufficient knowledge or information to form a belief as to the

truth of the allegations contained in this paragraph.

21

113.    Plaintiff is also entitled to punitive damages on all of her claims against the individual Defendants personally, to redress their willful, malicious, wanton, reckless and fraudulent conduct.

**ANSWER:**  Deny.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 -Excessive Force in violation of the
### Fourteenth Amendment on May3, 2014 (Against Defendants Epperson,
### Cabazuda, and Langunilla.)

114.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if  fully set forth at length herein.

**ANSWER:**  Defendants incorporate their answers to the preceding paragraphs as if fully set forth

herein.

115.    Relevant portions of 42 U.S.C. § 1983 provide that:
Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

**ANSWER:**  Admit.

116.    Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

**ANSWER:**  Admit.

117.    All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as staff of the State and their acts or omissions were conducted within the scope of their official duties or employment.

**ANSWER:**  Defendants deny any wrongdoing with regard to their acts or omissions.  Defendants

admit the remaining allegations contained in this paragraph.

22

118. On May 3, 2014, at the time of the complained of events of the first shot, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by the staff of the State.

**ANSWER:** Deny.

119. Any reasonable person knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

**ANSWER:** Deny.

120. The actions and use of force by Defendants Epperson, Cabazuda and Langunilla, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The force and failure to protect the Plaintiff's constitutional rights, and the use of unlawful forced drugging by these Defendant s violated the Fourteenth Amendment rights of Plaintiff.

**ANSWER:** Deny.

121. The force used constituted aggravated battery in that it could have caused and did cause serious bodily injury through use of drugs.

**ANSWER:** Deny.

122. None of the Defendants took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force of other Defendants or from the excessive force of later unlawful forced drugging despite being in a position to do so. The Defendants are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other Defendant.

**ANSWER:** Deny.

123. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.
**ANSWER:** Deny.

124. They did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

**ANSWER:** Deny.

125. The actions of the Defendants, and each of them, in the context and circumstances

23

where the Plaintiff represented no threat of harm to herself, other patients or staff violates the contemporary standards of decency.

**ANSWER:** Deny.

126.    The Defendants, and each of them, conducted a malicious and sadistic use of force to cause harm to the Plaintiff by forcing her to submit to administration of drugs, unlawful bodily touching and stripping away her clothing by two male staff members violates contemporary standards of decency, regardless of whether or not significant injury is evident. The Defendants used force in a willful, wanton and unnecessary fashion as no need for application of any force was evident when compared with any threat reasonably perceived by the responsible staff.

**ANSWER:** Deny.

127.    The Defendants' excessive force exceeded any reasonable use of force as no force was required whatsoever. The use of force to pull the Plaintiff's pants down  while holding her down over an examination table bent at the waste and exposing her  to male staff is a use of force so repugnant as to shock the conscience of mankind.

**ANSWER:** Deny.

128.    The acts or omissions of all individual Defendants were the direct and  proximate causes behind Plaintiff's injuries.

**ANSWER:** Deny.

129.    These individual Defendants acted in concert and joint action with each other.

**ANSWER:** Deny.

130.    The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional rights and caused her other damages.

**ANSWER:** Deny.

131.    These individual Defendants are not entitled to qualified immunity for the complained of conduct.

**ANSWER:** Deny.

132.    The Defendants to this claim, at all times relevant hereto, were acting  pursuant to municipal/county custom, policy, decision, ordinance, regulation,  widespread habit, usage, or

practice in their actions pertaining to Plaintiff.

**ANSWER:**  Deny the allegations contained in this paragraph as they contain legal conclusions.

133.    As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein  entitling her to compensatory and special damages, in amounts in excess of the  jurisdictional limit .

**ANSWER:**  Deny.

134.    On information and belief, Plaintiff may suffer lost abilities to recover in the environment she resides in and may further suffer physical and emotional pain from  ongoing and continued loss of society through the prolonged incarceration and rededication of false reports used to cover-up Defendants retaliatory use of excessive force and unlawful forced drugging. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre -judgment interest and costs as allowable by federal law.

**ANSWER:**  Deny.

135.    In addition to compensatory, economic and consequential damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**ANSWER:**  Deny.

**SECOND CLAIM FOR RELIEF:**
**42 U.S.C. § 1983 -Excessive Force in violation of the**
**Fourteenth Amendment on September 16, 2014 (Against Defendants**
**Hussain, Sandhu, and Rana.)**

**Defendants do not answer the allegations in Count II as the allegations do not pertain to them.**

**THIRD CLAIM FOR RELIEF:**
**42 U.S.C. § 1983 -Retaliation in Violation of**
**the First Amendment (Against Defendants**
**Epperson, Cabazuda, Langunilla, Hussain, Sandhu,**
**and Rana.)**

158.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth at length herein.

**ANSWER:**  Defendants incorporate their answers to the preceding paragraphs as if fully set forth

herein.

159.    42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

**ANSWER:**  Admit.

160.    Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

**ANSWER:**  Admit.

161.    All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as staff members of the State and their acts or omissions were conducted within the scope of their official duties or employment.

**ANSWER:**  Defendants deny any wrongdoing with regard to their acts or omissions.  Defendants

admit the remaining allegations contained in this paragraph.

162.    On May 3, 2014, and September 16, 2014, at the times of the complained of events, Plaintiff had the clearly established constitutional right to be free from retaliation for the exercise of protected speech.

**ANSWER:**  Deny.

163.    Any reasonable staff member knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

**ANSWER:** Deny.

164.    Plaintiff exercised her constitutionally protected right to question staff for arbitrary enforcement of restrictions and counter-therapeutic insults and escalations of hostility between staff and patients; and also exercised her constitutionally protected right to assert, proclaim or promote the statutory rights of patients to refuse psychiatric drugs; and/or also engaged in protected speech related to the constitutional rights of citizens with respect to seizures of their body by the State and objectionable conduct by staff of State.

**ANSWER:** Deny.

165.    Retaliatory animus for Plaintiff's exercise of her constitutionally protected rights -- to question staff and voice her own opinions regarding the scope of the staff's legal authority to restrict patients, engage in obviously counter-therapeutic insults and hostility toward patients, seize the body of a patient, or force the person of the Plaintiff or another patient to be medically treated through battery and forced drugging –was a substantially motivating factor in the excessive force used by individual Defendants.

**ANSWER:** Deny.

166.    The excessive force used against Plaintiff on May 3, 2014, and again on September 16, 2014, in retaliation for her protected conduct would deter a person of ordinary firmness from continuing to engage in the protected conduct.

**ANSWER:** Deny.

167.    All of these individual Defendants and other staff participated in this use of force as a means of retaliation for Plaintiff's exercise of her protected speech. None of the Defendants or other staff took reasonable steps to protect Plaintiff from this retaliation for the exercise of her protected speech. The individual Defendants are each liable for the injuries and damages resulting from the objectively unreasonable conduct that shocks the conscience of mankind.

**ANSWER:** Deny.

168.    Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

**ANSWER:** Deny.

169. The acts or omissions of all individual Defendants were direct and proximate causes behind Plaintiff's injuries and deprivation of her rights.

**ANSWER:** Deny.

170. The individual Defendants acted in concert and joint action with each other.

**ANSWER:** Deny.

171. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

**ANSWER:** Deny.

172. Defendants are not entitled to qualified immunity for the complained of conduct.

**ANSWER:** Deny.

173. The Defendants to this claim at all times relevant hereto were acting pursuant to State/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

**ANSWER:** Deny.

174. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory damages, in amounts in excess of the jurisdictional limit.

**ANSWER:** Deny.

175. On information and belief, Plaintiff may suffer lost abilities to recover in the environment where she resides in and may further suffer physical and emotional pain from ongoing and continued loss of society through the prolonged incarceration and rededication of false reports used to cover-up Defendants' retaliatory use of excessive force and unlawful forced drugging. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

**ANSWER:** Deny.

176. In addition to compensatory, economic and consequential, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in

28

that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**ANSWER:** Deny.

## AFFIRMATIVE DEFENSES

Defendants are government officials who performed discretionary functions. At all times material to the events alleged in Plaintiff's Second Amended Complaint, a reasonable person objectively viewing the facts and circumstances that confronted Defendants could have believed his actions to be lawful, in light of clearly established law and the information that Defendants possessed. Defendants, therefore, are entitled to qualified immunity.

## JURY DEMAND

Defendants request a trial by jury.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois          By:     */s/ Colin B. White*_____
                                               COLIN WHITE
                                               Assistant Attorney General
                                               General Law Bureau
                                               100 W. Randolph Street, 13th Fl.
                                               Chicago, Illinois 60601
                                               (312) 814-6135

## CERTIFICATE OF SERVICE

I, Colin White, hereby certify that I have caused true and correct copies of the above and foregoing Answer to Plaintiff's Second Amended Complaint to be sent via e-filing to all counsel of record on April 24, 2015, in accordance with the rules on electronic filing of documents.

                                               */s/ Colin B. White*_____
                                               COLIN B. WHITE
                                               Assistant Attorney General

29