UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCI WEBBER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SYED HUSSAIN, et al.,<br><br>　　　　Defendants. | No. 14 CV 5987<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, who is involuntarily committed to the Elgin Mental Health Center, claims she was forcibly and unnecessarily drugged on two occasions. In her second amended complaint, plaintiff alleges these injections—conducted by the defendant doctor, three nurses, and two staff members—constituted excessive force in violation of the Fourteenth Amendment and retaliation in violation of the First Amendment. Defendants, other than the doctor, have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss certain of these claims. For the following reasons, the motion is granted in part, and denied in part.

**I.　Legal Standard**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). In reviewing the sufficiency of a complaint, a court accepts the well-pleaded facts as true. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

## II. Background[1]

Plaintiff Marci Webber is involuntarily committed to the Elgin Mental Health Center. She claims she was forcibly and unnecessarily injected with medication on two separate occasions: once on May 3, 2014, by defendants William Epperson, Gus Cabazudo, and Gloria Lagunilla, and once more on September 16, 2014, by defendants Dr. Syed Hussain, Vicky Sandhu, and Chriselda Rana.

Plaintiff alleges that on the evening of May 3, 2014, a fellow patient informed her that staff member Marva Stroud had restricted their "snack time privileges." [29] ¶¶ 2–3. When plaintiff tried to get a snack a short time later, she was accosted by Stroud and staff member Velma Westbrook. *Id.* ¶¶ 5–6. Stroud and Westbrook yelled at plaintiff and prevented her from entering the dining room. *Id.* After speaking with these two for a while, plaintiff calmly returned to her room and spoke with her roommate for 15 minutes. *Id.* ¶¶ 7–14.

Five minutes later, security guard Zella Napier came to plaintiff's room and told her the nurse wanted to see her. *Id.* ¶ 15. Plaintiff followed Napier down the hall to the men's day room, where the two were joined by defendant security guards William Epperson and Gus Cabazudo. *Id.* ¶ 16. The three security guards continued to escort plaintiff to an examination area where defendant nurse Gloria Lagunilla

---

[1] The parties use varying spellings of defendants' and other witnesses' names. I adopt the spellings set forth by defendants in the present motion.

2

was waiting for them. *Id*. ¶¶ 17–19. Once inside, Epperson and Cabazudo held plaintiff still while Lagunilla injected her with medication. *Id*.

On the morning of September 16, 2014, plaintiff was escorted to the nurse's exam room for a meeting with defendant doctor Syed Hussain. *Id*. ¶ 22. During the meeting, plaintiff asked questions about the symptoms of mental illness and about the effects of certain medications on neuroreceptors. *Id*. ¶ 23. Hussain appeared annoyed, gave plaintiff cursory answers, and expressed disapproval over a book she was reading that is critical of psychiatry. *Id*.

Plaintiff walked back to her room with Stroud. *Id*. ¶ 24. Stroud insulted plaintiff along the way and implied she was a lesbian. *Id*. ¶ 25. Once in her room, Stroud refused to allow plaintiff any personal space and insisted she keep her face and hands uncovered and visible. *Id*. ¶¶ 26–27. Plaintiff said she could not take Stroud's humiliation any longer, so she went to the nurse's station to ask defendant nurse Vicky Sandhu to have someone else assigned to monitor her. *Id*. ¶ 28.

Although plaintiff was acting calmly, several more staff members—including Hussain, Ryma Jacobson, and Mario Rabazza—appeared and surrounded her, forcing her into a nearby conference room. *Id*. ¶¶ 29–32. The group proceeded to yell at plaintiff and speak crossly about her inappropriate and unacceptable behavior. *Id*. ¶ 32. Plaintiff alleges that "the staff who surrounded and intimidated [her] did so for the purpose of retaliating against her for her study in public (visible to other patients) of a book which they find objectionable, due to its leading and well-known criticisms of psychiatry." *Id*. ¶ 33. Plaintiff responded to this verbal onslaught by

declaring that "no standard of mental health care could ever countenance Stroud's intentional initiation and escalation of hostility and insults against a patient during [individual] observation." *Id.* ¶ 34. Plaintiff was then allowed to leave and to return to her room, but Hussain, Stroud, and Rabazza followed her closely behind. *Id.* ¶ 35.

A short time later, plaintiff entered the Center's day room with Stroud in tow. *Id.* ¶ 38. Stroud momentarily left the room, but soon returned with Hussain, who asked plaintiff if she wanted medication to calm down. *Id.* ¶¶ 39, 41. Plaintiff said she did not, but Hussain replied: "You are not calm enough because you are still talking." *Id.* ¶¶ 42–43. Hussain said they'd have to give plaintiff a shot. *Id.* ¶ 43. Plaintiff begged not to be medicated. *Id.* ¶ 44. On Hussain's order, two security guards grabbed plaintiff by her arms, which caused her to go limp and drop to her knees. *Id.* ¶ 45. Hussain ordered a staff member to "go get the nurse with the shot." *Id.* ¶ 46. Nurses Sandhu and Chriselda Rana appeared a moment later carrying syringes and paper towels. *Id.* Rana injected drugs into plaintiff's left arm, while Sandhu injected them into her right one. *Id.* ¶ 47.

In her second amended complaint, plaintiff claims that each of these incidents of forcible medication constituted excessive force in violation of the Fourteenth Amendment. She also believes both incidents were retaliation, in violation of the First Amendment, for speaking out against her medical treatment and for reading a book that is critical of psychiatry. Defendants Rana and Sandhu have moved to dismiss the excessive force (Count II) and first-amendment retaliation (Count III) claims against them, while defendants Epperson, Cabazudo,

4

and Lagunilla have moved to dismiss only the retaliation claim (Count III). Defendant Hussain has not moved to dismiss any claims.

## III. Analysis

### A. Count II – Excessive Force

In Count II, plaintiff claims defendants Hussain, Rana, and Sandhu used excessive force against her by "simultaneously inject[ing] [plaintiff] in both arms while she lay helpless and begging for mercy on the floor . . . ." [29] ¶ 149. As more fully discussed in the prior order, *see* [22] at 6–10, two conceptually overlapping tests apply to the excessive force claims in this case. The first test asks "'whether [the subject] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Carr v. Beth*, 465 Fed. App'x 567, 570–71 (7th Cir. 2012) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner." *Id*.

The second test asks "whether a particular action was taken 'for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose.'" *Kingsley v. Hendrickson*, 744 F.3d 443, 449 (7th Cir. 2014), *cert. granted*, 135 S.Ct. 1039 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). Under either test, where the challenged conduct was performed in the medical context by a medical professional, it is presumed valid. *See Youngberg v.*

5

*Romeo*, 457 U.S. 307, 323 (1982). This presumption may be overcome, and the medical professional may be subjected to liability, "only when the decision by the professional [was] such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the [professional] actually did not base the decision on such a judgment." *Id*.

Defendants Rana and Sandhu say the excessive-force claim should be dismissed because they have qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, – U.S. –, 135 S.Ct. 2042, 2044 (2015) (internal quotation omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what [she] is doing violates that right." *Id*. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id*. "[Courts] do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. "To determine if the defendants are entitled to qualified immunity, [the court asks] two questions: (1) whether 'the facts alleged show the [official's] conduct violated a constitutional right,' and (2) whether 'it would be clear to a reasonable [official] that [her] conduct was unlawful in the situation [she] confronted.'" *Armstrong v. Daily*, – F.3d –, 2015 WL 2182942 at *8 (7th Cir. May 11, 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)).

Qualified immunity protects Rana and Sandhu from suit on the excessive-force claim because it was not clearly established that their conduct was unlawful in the situation they confronted. Plaintiff does not discuss this issue in her response brief, but her second amended complaint alleges that she "had a clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by the staff of the State." [29] ¶ 140. While true, this articulation of plaintiff's rights is far too broad for the purposes of the qualified immunity analysis. *See Reichle v. Howards*, – U.S. –, 132 S.Ct. 2088, 2093–94 (2012) ("Here, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause."). Instead, the correct question in this case is whether it was clearly established that a nurse acts unlawfully in following a doctor's order to administer an injection under the circumstances presented to that nurse.

Plaintiff, who did not address this question, offers nothing to show that it was clearly established in September 2014 that the nurses should have refused the doctor's instructions. Defendants' cited authorities, by contrast, suggest that Rana's and Sandhu's conduct was not clearly unlawful and might have even been clearly lawful. *Bowers v. Seymour*, 436 Fed. App'x 676, 681 (7th Cir. 2011) ("Johnson, Seymour, and Schuknecht are nurses, and a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations.") (quotation omitted); *see also Brant v. Volkert*, 72 Fed. App'x 463, 466 (7th Cir. 2003)

7

("Moreover, Officers Cass and McClain followed the instructions of their supervisor and the procedures of the Freeport police department in effectuating Brant's arrest. Under these circumstances, the officers are entitled to qualified immunity because it cannot be said that their belief that their actions were lawful was unreasonable."); *Peacock v. Adams*, 915 F.2d 1565 at *2 (4th Cir. 1990) (affirming grant of summary judgment for defendant nurses where plaintiff did not show they "did anything but follow Dr. Smith's orders in forcibly administering the medication.").

A nurse following a doctor's orders can be held liable if there is evidence from which a jury can reasonably conclude the nurse should have questioned the doctor's orders. *See id*. But the allegations in this case do not support such a conclusion. Plaintiff alleges that Hussain was interacting with plaintiff in the day room, asking her if she wanted a shot to calm down. [29] ¶¶ 38–45. Hussain told the security guards to grab her, which caused plaintiff to fall to her knees *Id*. ¶ 45. It was only at this point that Hussain "ordered staff member Jacobson, 'Go get the nurse with the shot.'" *Id*. ¶ 46. Sandhu and Rana appeared a moment later and followed Hussain's orders. *Id*. ¶ 47. Nothing in these allegations, including the mere fact that plaintiff was being held and on her knees, should have given Sandhu or Rana any reason to question the doctor's orders. Moreover, it was not clearly established that the Constitution required Sandhu and Rana to question Hussain's medical judgment.

Defendants' motion to dismiss Count II as to Sandhu and Rana is granted.

## B. Count III – First Amendment Retaliation

In Count III, plaintiff claims defendants Epperson, Cabazudo, Lagunilla, Hussain, Sandhu, and Rana retaliated against her for exercising her rights under the First Amendment. To state a claim for first-amendment retaliation, a plaintiff must allege that (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter first-amendment activity in the future; and (3) the first-amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). To satisfy the third prong of this test, a plaintiff must allege that the first-amendment activity was a necessary or "but-for" cause of the retaliatory action. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 285–87 (1977); *Greene v. Doruff*, 660 F.3d 975, 977–80 (7th Cir. 2011).

Count III fails as to Sandhu and Rana because plaintiff's protected activity is not alleged to have been a "but-for" cause of the alleged retaliatory conduct. That is, even assuming these defendants bore retaliatory animus toward plaintiff, they would have injected her with medication anyway because Hussain ordered them to. *See* [29] ¶¶ 46–47, 92. And where an injury would have been inflicted anyway, "the defendant's improper motive would have done no work, had no effect, left the world unchanged." *Greene*, 660 F.3d at 978. "Without an injury, there is no tort, including a constitutional tort such as infringing a person's freedom of speech." *Id*. Defendants' motion to dismiss Count III is therefore granted as to Sandhu and Rana.

9

Turning to Epperson, Cabazudo, and Lagunilla, these defendants argue that plaintiff fails to allege any of them were aware plaintiff had engaged in any first-amendment activity before restraining and injecting her. Assessing the accuracy of this argument is complicated by the fact that plaintiff's second amended complaint describes these events several times and not always in a consistent manner.

Paragraphs 2 through 21, which describe the May 3rd incident in detail, do not support any inference that Epperson, Cabazudo, or Lagunilla had any knowledge of plaintiff's first-amendment activity. The three defendants were not around when plaintiff was questioning the staff, and when they finally encountered plaintiff that day, she did not object to her treatment—verbally or otherwise—before (or even after) the injection.

In paragraphs 72 through 87, which similarly describe the events in detail, plaintiff verbally objected to non-party Napier, but then acquiesced to her instruction to see the nurse. When the two were then joined by Epperson and Cabazudo, plaintiff "presented herself in a cooperative, calm and compliant fashion . . . ." [29] ¶ 79. Significantly, while all of this was happening, Lagunilla was already waiting with a syringe, prepared to forcibly medicate plaintiff. Thus, these allegations make plain that the decision to inject plaintiff was not based on anything plaintiff did or said after the time Napier went and got her. *See id.* ¶¶ 80–82.

In addition to these specific retellings, however, the second amended complaint contains two sections—paragraphs 51 through 60 and paragraphs 162

10

through 167—in which plaintiff speaks generally about defendants' retaliatory motivations. *See, e.g.*, *id*. ¶ 58 ("The drugs are ordered and forcibly delivered as a form of behavior control, and they are a cruel punishment administered as retaliation for Plaintiff's views and opinions"), 60 ("Defendants *all* regard it to be their proper job to convince Plaintiff that she must take psychiatric drugs, or if necessary, to forcibly drug her . . . to prevent or discourage her from telling other patients, staff or the public that in reality she is much better off not taking psychiatric drugs.") (emphasis added), 167 ("*All of these individual Defendant[s]* and other staff participated in this use of force as a means of retaliation for Plaintiff's exercise of her protected speech.") (emphasis added).

Although the second amended complaint is far from a model of clarity, the general allegations—taken with the specific allegations and construed in the light most favorable to plaintiff—present a plausible theory that suffices to put Epperson, Cabazudo, and Lagunilla on notice that plaintiff claims they forcibly injected her on May 3, 2014, as retaliation for her objecting to her medical treatment. Even though the specific allegations suggest these defendants did not observe any of plaintiff's first-amendment activity that day, the general allegations support the inferences that they previously had, and that that is why Lagunilla prepared the syringe.

Defendants' motion to dismiss Count III is therefore denied as to Epperson, Cabazudo, and Lagunilla.

## IV. Conclusion

Defendants' motion to dismiss [34] is granted in part, and denied in part. Remaining in this case are (1) plaintiff's fourteenth-amendment claims against Epperson, Cabazudo, Lagunilla, and Hussain, and (2) her first-amendment claims against Epperson, Cabazudo, Lagunilla, and Hussain.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 6/15/15